## Ex parte TINDALL.

No. 14674—Opinion Filed Sept. 9, 1924.

(Syllabus.)

**1. Carriers—Motor Vehicles as Common Carriers on Highways—Statute Regulating.**

Chapter 113, Sess. Laws 1923, page 188, is an act, the purposes of which are the regulation and control of motor vehicles, operating as common carriers for hire and profit over the public highways, and conferring upon the Corporation Commission the power to supervise, regulate, and control such common carriers.

**2. Same—"Public Service Enterprise"—State Control.**

The operation of motor vehicles, for the purpose of carrying passengers and freight, for hire and profit over the public highways as a transportation roadbed, is a "public service enterprise" within the constitutional definition of such an enterprise, and as such, subject to regulation and control by the state.

**3. Corporation Commission—Powers—Regulation of Public Service Corporations.**

Sections 18 and 19 of article 9 of the Constitution, specifically confer upon the Corporation Commission authority to supervise, regulate and control "public service corporations," and section 19 specifically provides that the commission may be vested with such additional powers and charged with such other duties as may be prescribed by law.

**4. Carriers—Transportation by Motor Vehicles—Control by Corporation Commission—Constitutionality of Act.**

An act, the purposes of which are to supervise, regulate, and control the operation of motor vehicles, doing a transportation business over the public highways for compensation and profit, and to vest the Corporation Commission with authority to enforce the provisions of such act, does not violate the provision nor the spirit of the Constitution, if such act confers no powers substantially different from those specifically conferred by the Constitution itself.

**5. Constitutional Law—Guaranties of 14th Amendment to U. S. Constitution.**

The Fourteenth Amendment to the Con-

stitution of the United States contains three distinct protective provisions, guaranteed to citizens of the United States as such, to wit:

(1) That no state shall pass any law abridging the privileges and immunities of citizens of the United States.

(2) No state shall deprive any person of life, liberty or property without due process of law.

(3) No state shall deny any person within its jurisdiction of equal protection under the law.

## 6. Constitutional Law—"Police Power"—Origin and Nature.

The police power is an attribute of sovereignty, inherent in every sovereign state, and not derived from any written Constitution, nor vested by grant of any superior power.

The term "police power" comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal, and protection of the public interests.

It is plastic in its nature and will expand to meet the actual requirements of an advancing civilization and adjust itself to the necessities of moral, sanitary, economic, and political conditions.

No principle in our system of government will limit the right of government to respond to public needs and protect the public welfare.

## 7. Same—Police Power of States—Effect of 14th Amendment to U. S. Constitution.

The Fourteenth Amendment to the Constitution of the United States does not interfere with the proper exercise of the police power of the several states.

## 8. Constitutional Law—Due Process of Law.

The provision in the Fourteenth Amendment to the Constitution of the United States, and the provision in section 7, art. 2, of the Constitution of Oklahoma, to wit: "No person shall be deprived of life, liberty or property without due process of law," are fully met by due notice and complete hearing under established rules of procedure before a judicial tribunal of competent jurisdiction.

## 9. Corporation Commission—Powers—Public Service—Regulation—Constitutionality of Act.

The limitations in section 32, art. 2, and section 51, art. 5, of the Constitution against granting exclusive rights and privileges and creating monopolies, are not exceeded by an act which confers upon the Corporation Commission the power to make and enforce certain rules, where the power to enforce such rules is made conditioned upon the fact of public convenience and necessity.

It is a fundamental principle that persons or corporations engaged in occupations in which the public has an interest or use may be regulated by statute. In such case the test of power is found in the effect which the pursuit or calling has upon the public weal.

## 10. Same—Review of Findings.

Where the exercise of powers conferred upon the Corporation Commission by an act, is conditioned upon the actual existence of a public necessity, and the finding as to such necessity is subject to review by a judicial tribunal of authorized jurisdiction, the commission is thereby shorn of arbitrary or capricious powers, should it in any instance attempt to exercise such powers.

## 11. Same—Right of Appeal.

Sections 18 and 19 of art. 9 of the Constitution specifically confer certain powers upon the Corporation Commission, and specifically authorize the Legislature to confer additional powers upon such commission; and section 20, Id., grants an appeal from orders of the Corporation Commission to this court, hence the provisions of an act conferring certain powers of the same nature and character as those specifically conferred by the Constitution itself are not rendered unconstitutional merely because the act fails to provide for an appeal, inasmuch as the right of appeal provided for in section 20, Id., automatically vests in any party aggrieved by the enforcement of such power.

## 12. Same—Act Empowering Corporation Commission to Regulate Motor Vehicle Carriers.

The act in question does not specifically provide for an appeal, but the powers conferred by such act, being of the same nature and character as those specifically conferred by sections 18 and 19 of art. 9 of the Constitution, the right of appeal granted by section 20, Id., automatically vests in any party aggrieved by the enforcement of powers conferred by the act.

## 13. Same.

The act in question being no more nor less than the granting of additional powers, authorized by section 19, art. 9, of the Constitution, the right of appeal provided for in section 20, Id., automatically vests in any party aggrieved by an order of the commission, whether the act itself provides for an appeal or not, and the reasonableness of any order of the commission thereby becomes subject to review by this court, and the act itself not void because of its failure to provide for appeal.

### 14. Highways—Regulation of Use—Licensing Carriers.

The public highways of the state being built and maintained by means of taxation, the public has a two-fold interest in such highways, viz.:

1st. From the standpoint of public convenience and necessity.

2nd. From a property interest in highways built and maintained at public expense, and as a consequence the public has a right to regulate the use of such highways.

It has a right to demand a license fee from persons or corporations seeking to use the highways as a transportation roadbed for hire, and has a right to say whether its conveniences and necessities and property interests in such highways demand the licensing of one or more than one of such enterprises, and the right to license one and reject all others.

### 15. Statutes—"Revenue Bills"—Act Requiring License Fee from Motor Vehicle Carriers.

The real purpose of the act being to regulate the use of public highways by transportation companies, a provision in such act requiring payment of a tax or license fee for the privilege of operating such business, such fee or tax being merely incidental to the enforcement of the real purpose of the act, does not render the act void under section 33, art. 5, of the Constitution, which requires all revenue bills to originate in the House of Representatives.

### 16. Constitutional Law — Distribution of Powers Among Distinct Departments of State—Powers of Corporation Commission—Delegation by Legislature.

Article 4 of the Constitution divides the powers of state government into three separate and distinct departments, viz., executive, legislative, and judicial, and provides that neither department shall exercise the powers given to the other, but contains this express exception, to wit., "except as provided in this Constitution."

The creation of the Corporation Commission and the vesting of it with specific administrative powers partaking of the nature of executive, legislative, and judicial functions, is a concrete example under such exception, and with the authority expressly given the Legislature by section 19, art. 9, removes all questions of the authority of the Legislature to delegate to the Corporation Commission powers similar in nature and character to those specifically conferred upon it by the Constitution.

### 17. Statutes—Sufficiency of Title—Act Regulating Motor Vehicle Carriers.

The title to the act in question, as well as the provisions of the act itself, examined, and held, that the purposes of the act are expressed with sufficient clearness in the title to cover all of the provisions of the act, and to meet the requirements of section 57, art. 5, of the Constitution.

Original Action in the Supreme Court of Oklahoma.

Application by A. L. Tindall for writ of habeas corpus. Writ denied.

Giddings & Giddings, H. C. Hargis, W. H. Bingham, and Fred H. Thompson, for petitioner.

Clark Owsley, Corporation Commission Atty., Geo. F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

J. B. Dudley and K. W. Shartel, amici curiae.

HARRISON, J. This is an application of A. L. Tindall for writ of habeas corpus and involves the constitutionality of chapter 113, Sess. Laws 1923, page 188, known as the "Motor Vehicle Act."

Petitioner alleges that he is unlawfully distrained of his liberty by the sheriff of Osage county upon a warrant issued out of the county court of said county and based upon a prosecution pending in said county wherein petitioner is charged with violation of said act.

Petitioner does not deny that he has violated said statute, but bases his right to a discharge upon the ground that said act is unconstitutional and void.

The statute in question is an act entitled:

"An Act providing for the supervision, regulation and conduct of the transportation of persons, freight and property for compensation over the public highways of the state of Oklahoma by motor vehicles, conferring jurisdiction upon the Corporation Commission, providing for the enforcement of the provisions of this act and for the punishment for violations thereof, repealing all acts inconsistent with the provisions of this act, and declaring an emergency."

Petitioner contends that such act is void for sundry reasons, to wit:

That it is violative of the Fourteenth Amendment to the Constitution of the United States, and violative of section 7, section 23, and section 32 of art. 2, and of section 51, art. 5, of the Constitution of Oklahoma, and void for the reason that it is an unlawful delegation of legislative power to the Corporation Commission of the state, and an unlawful attempt to confer upon such commission powers in excess of those granted by the Constitution; that it is void because not general in its character and purports to grant arbitrary powers to

the Corporation Commission; void because it purports to grant to the Corporation Commission the power to create a monopoly in violation of the Constitution of the United States; void because it purports to grant to such commission the right to make penal rules and regulations; void because it requires operators of motor vehicles to make a bond and deprives such operators of the right to deposit cash or Liberty Bonds or to have freeholders of the state to sign such bond; void because it contains matters not set forth in its title; and void because it imposes a tax upon the business instead of a regulation charge, said tax to be paid to the Highway Commission to be used for the maintenance and upkeep of its highways. Petitioner further alleges that the Corporation Commission in exercising the powers given by the provisions of said act, as construed by such commission, has been granting franchises to one person to operate motor vehicles over given highways and denying such privileges to other persons over the same highways thereby granting exclusive privileges and creating monopolies; that the Corporation Commission has made unjust rules and regulations and rates of fare to be charged by persons operating such vehicles; that the rules and regulations prescribed by the Corporation Commission are discriminatory between persons of the same class. Petitioner further alleges that he has applied to the district court of Osage county for a writ of habeas corpus and been denied, wherefore he prays this court for such a writ.

The grounds alleged in the petition are not presented in the briefs in the order in which they are alleged in the petition, yet the constitutional questions are presented in a general way, which, if true, and authorities are cited which if applicable, might sustain petitioner's grounds as a whole. But at the threshold of this controversy we are confronted with the proposition that this act is no more nor less than an act to regulate "common carriers" doing a transportation business for hire and profit over the public highways of the state.

That the state may exercise a supervisory control over the public highways is too clear to be seriously questioned, and that the state may exercise such control over "common carriers" is equally clear, and that the business sought to be regulated by the act in question is that of a "public service corporation" for hire and profit is also clear. See section 34, art. 9, of the Constitution. That the Corporation Commission

has power to regulate "public service corporations" is also clear. See art. 9 of the Constitution. That the Legislature is empowered to vest the Corporation Commission with additional powers and to charge it with additional duties, other than those specifically enumerated and conferred in the Constitution, is also clear. See section 19, art. 9, of the Constitution.

Therefore we must conclude that the general character of the act is within all constitutional limitations and that the general purpose of the act is clearly within the purview of the Constitution. This being true, the act is not wholly void and the petitioner is not entitled to the relief sought, unless by the enforcement of some specific provision of the act he has been deprived of a constitutional right. It appears that petitioner has not endeavored to avail himself of the privileges granted by the act in question, by applying to the Corporation Commission for a license to engage in the business of "common carrier" over the public highways, as required by the act, and that the Corporation Commission by the enforcement of an invalid and arbitrary rule has denied him of a constitutional right, but it appears from the petition and record that petitioner has sought to conduct the business of a "common carrier" along the public highways of the state in willful disregard of the law of the state, and in open defiance of the express provisions of the Constitution, as well as the provisions of the act in question. Petitioner has also overlooked the fact that in seeking to do a public service business he does not stand before the law in the capacity of a private citizen, as such, seeking a private right of citizenship, but comes as a "public service" entity, seeking to render a service to the public of the state for hire and profit. In such capacity, in order to avail himself of the privilege of conducting such business, he must subject himself to the Constitution and laws governing public service enterprises.

Section 34, art. 9, of the Constitution contains the following definition:

"* * * The term 'public service corporation' shall include all transportation and transmission companies, all gas, electric light, heat and power companies, and all persons authorized to exercise the right of eminent domain, or to use or occupy any right of way, street, alley, or public highway, whether along, over, or under the same, in a manner not permitted to the general public; the term 'person,' as used in this article, shall include individuals, partner-

ships and corporations, in the singular as well as plural number."

"Public service concerns" of the state are subject to regulation and control by the state. Sections 18-34, art. 9, of the Constitution. Therefore petitioner, although a private individual, and as such entitled to all the privileges and immunities accorded to all private citizens, entitled to equal protection with all private citizens as to the private rights and privileges inuring to citizenship, as such, yet when he comes before the law as a "public service entity," seeking to render a public service for hire and profit, he thereby, so far as his business is concerned, and so far as his right to operate such business is concerned, absolves himself from the distinct rights of a private citizen and stands in the class with other "public service enterprises."

It is true that petitioner contends that he is being held and deprived of his liberty as a private individual and citizen by virtue of a purported warrant issued under a void statute, and asks that he be discharged through writ of habeas corpus. In this sense, he is entitled to a discharge, provided the act for the violation of which he is held is wholly null and void.

For this reason and for the further reason that the validity of the act in question is a matter of public concern, in order to put at rest the constitutionality of such act, we will entertain jurisdiction of the entire subject-matter and determine whether the act is valid or wholly void.

Section 19, art. 9, of the Constitution defines and specifies certain powers and duties therein conferred upon the Corporation Commission, and expressly provides that—

"The commission may be vested with such other additional powers (not inconsistent with this Constitution) and charged with such other duties as may be prescribed by law."

We have already pointed out that the state has a supervisory control over "public highways," over "common carriers," "transportation companies," and "public service enterprises," coming within the constitutional definition of such enterprises, and already shown that the operation of motor vehicles over the public highways of the state for hire and profit comes within the term "public service," and that the act in question, in its general character and purpose, is within the scope of constitutional limitations; therefore we have a fixed point of beginning.

The first contention is that the act is in contravention of the Fourteenth Amendment to the Constitution of the United States. The provisions of said Amendment relied upon, to wit:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"

—are not, in our opinion, contravened by any provision of the act in question. The title of the act is set forth above. Section 1 of the act defines the term "motor vehicle," the term "common carrier," and the term "public highway."

Section 2 provides as follows:

Section 2. "The Corporation Commission of the state of Oklahoma is hereby vested with power and authority, and it shall be their duty to supervise and regulate every motor carrier doing an inter-city business or operating between fixed termini or over a regular route and not operating exclusively within the limits of an incorporated city or town in this state; to fix or approve the maximum or minimum, or maximum and minimum rates, fares, charges, classifications and rules and regulations pertaining thereto of each motor carrier; to regulate and supervise the accounts, schedules, service and safety of operations of each such motor carrier; to prescribe a uniform system and classification of accounts to be used, which among other things shall set up adequate depreciation charges, and after such accounting system shall have been promulgated, motor carriers shall use no other; to require the filing of monthly, annual and other reports, and any other data; and to supervise and regulate motor carriers in all other matters affecting the relationship between such common carriers and the traveling and shipping public. The Corporation Commission shall have power and authority by general order or otherwise to prescribe rules and regulations applicable to any and all motor carriers. All control, power and authority over railroads and railroad companies now vested in the Corporation Commission is hereby specifically extended to include such motor carriers."

Section 3 provides that all transportation charges shall be reasonable, and that unreasonable charges shall be unlawful. Section 4 provides as follows:

Section 4. "It is hereby declared unlawful for any motor carrier to operate or furnish service within this state without first having obtained from the Corporation Commission a certificate declaring that public convenience and necessity require such

operation. The Corporation Commission shall have power, and it shall be their duty after public hearing, to issue said certificate as prayed for, or to refuse to issue the same, or to issue it for the partial exercise only of said privilege sought, and may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require. The Corporation Commission may at any time after a hearing and for good cause suspend, alter, amend or revoke any such certificate. Motor carriers must operate and furnish service in strict conformity with the current existing terms and provisions of their respective certificates of convenience and necessity. The Corporation Commission shall adopt rules prescribing the manner and form in which motor carriers shall apply for certificates required by this section. Among other rules adopted, the application shall be in writing and shall set forth the following facts:

"(a) It shall contain the name and address of the applicant and the names and addresses of its officers, if any, and shall give full information concerning the financial condition and physical properties of the applicant.

"(b) The complete route over which applicant desires to operate and the kind of transportation, whether passenger or freight, or both, in which applicant intends to engage, together with a brief description of each vehicle which applicant intends to use, including the seating capacity thereof, if for passenger traffic, or the tonnage, if for freight traffic.

"(c) A proposed time schedule.

"(d.) A schedule of tariff showing the passenger fares or freight rates to be charged between the several points or localities to be served.

"Upon the filing of said application, the Corporation Commission shall, in its discretion, fix a time and place for the hearing of the same, which time shall not be less than five days nor more than ten days after the filing of said application."

Section 5 provides that no motor vehicle weighing more than 15,000 pounds, including its load, shall be authorized to operate over the public highways without special authority from the Corporation Commission.

Section 6 provides for mileage tax to be paid by such motor carriers for the maintenance of the public highways, and further provides that such motor carriers shall make monthly reports to the Corporation Commission as to the number of trips made, and that the Corporation Commission shall make monthly reports to the State Highway Commission of the amount of tax collected from each motor carrier, such taxes to be payable to the State Highway Commissioner.

Section 7 provides that no certificate shall be issued to a motor carrier until such carrier has first filed a liability bond signed by some surety company authorized to do business in the state, in such sum as the Corporation Commission may deem necessary to protect the interest of the public. And said section further provides that the commission shall also require an additional bond, conditioned that such carrier will pay all fees, taxes, and charges due the state, and that no other bonds than those prescribed in the section shall be required by any city, town, or other agency of the state. Section 8 provides that the Corporation Commission, in the exercise of authority vested by this act, shall promulgate certain safety rules to be observed by such motor carriers, and authorize the enforcement of such rules by such penalties and forfeitures as may be necessary to enforce obedience to such safety rules, and specially provides that such rules must include those enumerated in subdivisions a, b, c, d, e, f, g, and h of said section.

Section 9 of the act is a repealing clause.

Section 10 declares violations of the provisions of the act to be a misdemeanor punishable by fine or imprisonment or both.

Section 11 declares an emergency, and that it shall take effect upon its passage and approval.

Now, the Fourteenth Amendment to the Constitution of the United States contains three distinct guaranties or protective provisions, to wit:

1st. That no state shall pass any law abridging the privileges and immunities of citizens of the United Sates.

2nd. No state shall deprive any person of life, liberty, or property without due process of law.

3rd. No state shall deny any person within its jurisdiction of equal protection under the laws.

In view of the proposition that it is petitioner's business which, in its character of a "public service enterprise," is seeking, herein to avoid the provisions of the act in question, and not the petitioner himself, in his individual capacity as a private citizen, as such, and in view of the proposition that the nature and character of petitioner's business is within the proper sphere of the "police power" of the state, we cannot sustain the contention that any of the three foregoing provisions of the Fourteenth

Amendment are contravened or violated by any of the provisions of the act in question.

"The police power is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government. It is inherent in the states of the American Union and is not a grant derived from or under any written Constitution." 6 R. C. L., sec. 182, page 183. Also 8 Cyc. 1043; 12 C. J. 904-934; Black's Const. Law (3rd Ed.) 387, 394-412, 433.

While the term "police power" has never been specifically defined nor its boundaries definitely fixed, yet it may be correctly said to be an essential attribute of sovereignty, comprehending the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal.

It may also be equally well said that its limitations are plastic in their nature and will expand to meet the actual requirements of an advancing civilization and adjust themselves to the necessities of our multiplying complexities in moral, sanitary, economic, and political conditions. See 6 R. C. L. page 187-97. 8 Cyc. 863-876, 889-900, and authorities cited, supra. No principle in our system of government will limit the right of government to respond to public needs and protect the public weal.

"The 14th Amendment to the Constitution of the United States does not interfere with the proper exercise of the police power of the several states." 6 R. C. L., sec. 194, page 197

—citing more than a dozen decisions from the Supreme Court of the United States and numerous decisions from the Supreme Courts of various states. See, also, authorities above cited in Cyc., C. J., and Black's Const. Law.

Therefore petitioner's first contention cannot be sustained.

The second ground is that the act in question is violative of section 7, art. 2, of the Constitution of Oklahoma.

Section 7, art. 2, Id., is as follows:

"No person shall be deprived of life, liberty or property without due process of law."

While this contention is fully answered in the foregoing discussion regarding the Fourteenth Amendment, yet it may be well to specifically determine its relation to our state Constitution. Recognition of the principle embodied in the term "due process of

law" is of ancient origin; it had been recognized and had become interwoven into and a part of the common law long prior to the adoption of Magna Charta (2nd Coke Inst. 45-50), and has been adopted as part of the organic law of our federal government and of each state government, thus constituting one of the essential foundation stones upon which the entire structure of our government rests; yet it has been said by the Supreme Court of the United States—

"That it would be very difficult, if not impossible, to frame a definition of the term which would be accurate, complete, and appropriate under all circumstances." Brown v. N. J., 175 U. S. 172, 20 Sup. Ct. Rep. 77, 44 L. Ed. 119. Also 6 R. C. L., page 433, and cases cited in notes.

It has universally been conceded to at least mean a regular course of administration through courts of justice according to those rules, terms, and procedure established by law for the protection of private rights and public needs, a process in accord with the settled course of judicial proceedings, and, while it has been held that to constitute due process of law does not essentially demand a judicial hearing, yet no court has ever denied that a full and complete hearing, under the established rules or procedure before a judicial tribunal of competent jurisdiction, is "due process of law."

The latest and one of the clearest and most succinct expressions on the meaning of the term, perhaps, is that of Mr. Justice Pitney in Ochoa v. Hernandez Morales, 230 U. S. 139-40, 57 L. Ed. 1427, wherein he says:

"Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another contrary to the settled usages and modes of procedure and without notice or an opportunity for hearing."

What is here said by Mr. Justice Pitney as to the taking of property without a hearing applies equally and in the same sense to the taking of life or liberty without hearing.

In the language of Webster, in his argument in the Dartmouth College Case, 4 L. Ed. (U. S.) 629, and quoted in many opinions subsequently rendered, it means—

"A law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial."

Its demands are answered by the granting of "a day in court." The act in ques-

tion does not deprive the petitioner of such a hearing, hence his second contention cannot be sustained. 8 Cyc. 1089-85; 12 C. J. 1188-1200; Black's Const. Law (3rd Ed.) 570-595.

Petitioner's third ground for contention is that the act is violative of section 51, art. 5, of the Constitution, which provides:

Section 51, art. 5. "The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this state."

And petitioner's fourth ground of contention is that the act is violative of section 32, art. 2, of the Constitution, which provides:

Section 32, art. 2. "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this state."

These two constitutional provisions, in their ultimate effect, attain substantially the same object, viz.: Each constitutes a limitation upon the granting of special privileges and the creation of monopolies; hence the two grounds of contention will be considered together.

Bearing in mind that the business of petitioner is that of a "transportation company" for hire, and therefore a "public service enterprise" and subject to state control, keeping in mind, also, that the state may exercise control over the public highways, and that this is a business seeking to appropriate the public highways to its own use as a roadbed, seeking to charge the public a profit for a service to be rendered over the public highways, there is no merit in the contention that the state, within the sphere of its police power, cannot exercise a reasonable control over such business.

"It is laid down as a fundamental principle that persons or corporations engaged in occupations in which the public have an interest or use may be regulated by statute." 6 R. C. L., sec. 217, p. 224; Munn v. Ill. (U. S.) 24 L. Ed. 77; also 8 Cyc. 1070; 12 C. J. 1167-1172; Black's Const. Law (3rd Ed.) 97, 413, 397-394; 399, 403.

The gist of petitioner's contention on the above two grounds is that under the act a person desiring to engage in the transportation business over the public highways must, first, obtain a license to do so; and that the Corporation Commission is vested with power to grant or refuse such license, and that the power to grant a license to one, and refuse a license to another, is granting to the Corporation Commission an arbitrary power of granting an exclusive privilege and thereby creating a monopoly in violation of the two foregoing provisions of the state Constitution.

But this contention will not stand the test of fair analysis nor the weight of decisions.

"Since all rights are held subject to the police power of the state, when necessary the Legislature may prohibit absolutely the maintenance of any particular business if the public safety or the public morals require its discontinuance; and the hand of the Legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. * * *

"The test of the power is found in the effect the pursuit of the calling has upon the public weal rather than in the inherent nature of the calling itself." 6 R. C. L., sec. 214, p. 221-2.

This doctrine is so essential and so sound as to be properly applied to "private business enterprises" as well as to "public service enterprises." It applies to private business enterprises whenever such business affects the public welfare and essentially applies to public service concerns because of the right of the public to regulate a service for which the public must pay a fee and profit. To deny this right to the public would be to deny the public of that sacred right which petitioner has so strenuously argued on his own behalf, viz., that of "due process of law." To allow operators of motor vehicles to appropriate the public highways to their own free use, and to charge the public a fee and profit for the service to be rendered over same without license to do so and without regulation, would constitute a clear, concrete example of taking property without "due process of law."

Hence the contention is unsound and without merit.

The dangerous menace, which seems to so much disturb petitioner, viz., "the granting of a special privilege and creation of a monopoly," is not authorized by the act. When the act is fairly and logically analyzed and its provisions impartially observed, it does not authorize the Corporation Commission to exercise the arbitrary or capricious power of granting a perpetual special privilege or creating a perpetual monopoly. The Legislature in the enactment of this statute has clearly kept in mind the test above quoted from R. C. L., viz.: "the extent to which the public rights and welfare may

be affected by any given business enterprise," and in the statute under consideration the crucial and decisive test of the Corporation Commission's power is the fact of the convenience and necessities of the public.

The Corporation Commission is not permitted to exercise any of the powers vested in it of the act, unless, as a fact, the public convenience and necessities require the exercise of such power. The question of the public convenience and necessities thereby becomes the decisive question of fact, to be determined from evidence, and if the Corporation Commission be unreasonable in its finding as to such fact or should make an order without sufficient evidence, finding that public convenience or necessity either demanded or did not demand such service, and should make and attempt to enforce an order accordingly, then the party aggrieved, either the applicant or the public, has a right of appeal to 'this court for a judicial inquiry and review as to the sufficiency of the evidence and the reasonableness of the order.

The commission is thereby shorn of those menacing arbitrary powers which petitioner seems to fear. It is within the police power of the state to grant a privilege to render any character of public service which will materially benefit the public, and equally within such power to restrict or deny such privilege whenever it would result in detriment to the public. See Police Power of the State, 6 R. C. L., p. 228; 8 Cyc. 863-874; and same subject in other authorities above cited. Also Regulation and Prohibition of Occupation, 6 R. C. L. p. 217, and authorities above cited.

The question whether the public will be beneficially or detrimentally affected by the licensing or refusing to license the operation of motor vehicles as a "transportation enterprise," over the public highways, for a profit to be paid by the public, is made a determining fact, the reasonableness of which is subject to review by this court.

But it is contended that the act in question makes no provision for appeal. Granting this to be true, it does not render the act unconstitutional. The article of the Constitution (art. 9) which created the Corporation Commission and vested it with certain specific administrative powers also provides that the Legislature may confer additional powers and duties upon such Commission, and further provides that from all orders of the Corporation Commission an appeal will lie to this court by the aggrieved party. Therefore the act in ques-

tion being no more nor less than the granting of additional powers authorized by section 19, art. 9, of the Constitution, the right of appeal, expressly granted by section 20 of said article, automatically vests in any party aggrieved by an order of the commission, whether the act specifically provides for an appeal or not, and if the act should attempt to deny the right of appeal, it would not thereby be rendered unconstitutional in its entirety, but only void as to the provision attempting to deny the right of appeal, without affecting the validity of the remaining portions of the act. Therefore the act in question does not grant nor purport to grant such arbitrary and final power to the Corporation Commission as will enable it to grant a perpetual special privilege or build up a monopoly,—the demands of public needs and convenience would halt such menace before this court.

In the class of business sought to be regulated by this act, the public has an interest, a two-fold interest, one from a standpoint of convenience and necessity, the other from the standpoint of public property rights, in the appropriation and use of its public highways.

It is a matter of common knowledge, therefore one of which courts will take cognizance, that the advent of throngs of automobiles and motor vehicles has necessitated the building of paved roads at a burdensome expense to the public. The public, as such, is therefore vested with a property right in such highways, and it is folly to argue that the public has no voice as to who shall appropriate its highways to their own free use and then charge the public a profit for such use. The property of the public can no more be taken and appropriated to the use, benefit, and profit of private enterprises, without due process of law and fair compensation, than the property of a private enterprise can be taken by the public without due process of law and fair compensation. Reasonable regulation of transportation companies, operating over public highways, is no more nor less than a valid and reasonable protection against the appropriation of public property by private individuals without due process of law and without compensation. If the Corporation Commission should attempt to enforce any arbitrary or unreasonable order under powers supposed to be granted by this act, then, regardless of the right of appeal, this court, under its expressly given supervisory powers, through means of some of the remedial writs provided for in the Constitution, could grant speedy and proper relief.

Therefore the act in question does not confer any arbitrary final powers upon the Corporation Commission. It would be impossible for the Commission, acting under such act, to grant a special privilege detrimental to the interests of the public, or to create a monopoly with like effect. The public has a voice in the enforcement of this act and the right to speak whenever its interests are not subserved. It has a right to say that no person or corporation shall use its public highways as a "transportation line" for hire; it has a right to say that any one who may be permitted to operate over such lines in such manner must have a license to do so, and has a voice as to whether its necessities and convenience require that one, two, or three shall be licensed to render the required service, or that none is required. It might be a material benefit to the public to have one transportation line over a given highway, and a substantial detriment to have more than one, hence the limit to the number is determined by the public needs. It is not that the petitioner or any other private concern has a vested right or any right to appropriate the public highways to its own free use and benefit for profit, but that the public, from the standpoint of its convenience and necessities, as well as from the standpoint of property rights in the public highways, may demand a "public service" if it needs it, or reject it if it is not needed, and a voice as to how much of such service it needs and the conditions under which it may be rendered, and no private rights are paramount to the public good.

The fifth ground of contention is that the act in question is violative of section 23, art. 2, of the Constitution of Oklahoma, which provides:

Section 23, art. 2. "No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law."

The above provision has no application to any rights or issues involved in this cause, nor is it affected by any provision in the act.

The sixth ground of contention is that the act is void because of its invalid delegation of legislative powers to the Corporation Commission.

It is true that our Constitution, in article 4, divides the powers of government into three distinct departments, legislative, executive, and judicial, and provides that each shall be separate and distinct from the other, neither exercising the powers of the other; but it also contains this express exception to wit, "except as provided in this Constitution." The creation, by the Constitution, of the Corporation Commission as an administrative board is one exception to the provisions of article 4; the creation of an agricultural board is another; the authorization of the creation of the banking board is another; each being either specifically created by the Constitution, or its creation expressly authorized by the Constitution, and each specially vested, or expressly authorized to be vested by law, with a given sphere of "administrative power," and charged with the duty of enforcing them.

The rapid progress of our government, with its vast increase in population, its multiplying variety of occupations, business enterprises, public utilities and public needs, with the countless conflicts in interest arising from such complex affairs, has brought about an imperative necessity for "administrative boards" to assist the "major departments" of government in the necessary regulation and control of such affairs. While the powers and duties conferred upon such boards may partially partake of the nature of legislative, judicial, or executive functions, they are nevertheless purely administrative in character and not legislative, judicial, nor executive powers in the strict legal sense of such terms. Such boards exercise their powers and administer their duties within the limitations of a substantive law regularly enacted by the Legislative Department, yet the details in their process of regulation are merely administrative and as such subject to review by a regular judicial tribunal.

In view of the general holding of the courts, regarding the delegation of administrative powers to boards and commissions (Black's Const. Law, 96; 8 Cyc. 833; 12 C. J. 847; 6 R. C. L. 179), we would feel inclined to this comprehensive view, even in the absence of the express exception made in article 4 of our Constitution, and in the absence of the concrete precedents under such exception contained in our Constitution in the specific creation of our Corporation Commission and other administrative boards.

But our Constitution has not only recognized the necessity for administrative boards, but has made express exception to the rule of distinction between the powers of the three major departments, and expressly cre-

ated the Corporation Commission and specifically endowed it with certain powers, charged it with certain duties, and authorized the Legislature to confer additional duties and powers upon it, thereby removing the question of invalid delegation of powers. Article 9, Constitution of Oklahoma.

There are no powers given, no duties imposed upon the Corporation Commission by the act in question, which are substantially different from those specifically conferred by the Constitution itself.

The remaining grounds of contention are disposed of by a determination of the questions heretofore discussed and determined, with the exception of the 11th ground, in which petitioner contends that the act is void because it contains matters not set forth in its title.

The title to the act is above set forth in full, also the material provisions complained of are set forth in full, and the remaining provisions of the statute sufficiently set forth and analyzed to disclose the act as a whole, and we find no provisions therein which are not clearly within the scope of subject-matter intended or reasonably expected to be covered by the title.

We therefore hold that the act in its entirety is constitutional and valid.

The writ is denied.

JOHNSON, C. J., and BRANSON, WARREN, and GORDON, JJ., concur. NICHOLSON, J., dissents.