**CHICAGO, R. I. & P. RY. CO. v. STATE et al.**

No. 16797—Opinion Filed Sept. 14, 1926.

Rehearing Denied Feb. 1, 1927.

**1. Corporation Commission—Validity of Orders—Appeal.**

The orders of the Corporation Commission must be reasonable and lawful, based on findings of fact supported by competent evidence, and such findings are conclusive on this court unless manifestly against the evidence; and the question whether they meet the requirements is subject to review on appeal.

**2. Carriers—Permit for Motor Vehicle Service—Showing of "Necessity."**

In the statute requiring the issuance of a certificate of public convenience and necessity as a prerequisite to the operation of a motor carrier, the word "necessity" is not used in the sense of being essential or absolutely indispensable, but in the sense that the motor vehicle service would be such an improvement of the existing mode of transportation as to justify or warrant the expense of making the improvement. It should be made to appear that the inconvenience of the public occasioned by the lack of motor carrier transportation is so great as to amount to a necessity.

**3. Same—Need for |Additional Service.**

To warrant the licensing of additional public utility, it must appear that the present serving facilities are inadequate and inconvenient to the traveling public, and the proposed facilities will eliminate such inadequacy and inconvenience.

**4. Same—"Convenience and Necessity" Justifying Motor Bus Line Competing with Railway.**

That a proposed bus line serving the same territory as an established railway line may accommodate a few individuals does not justify a certificate of convenience and necessity to operate; the convenience and necessity which the law requires being the convenience and necessity of the public at large, as distinguished from that of an individual, or any number of individuals.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Appeal from Corporation Commission.

Application by Robert G. Hickox and E. A. Sharpe for a certificate of convenience and necessity to operate motor carrier between Chickasha and Waurika. From an order granting such certificate, respondent, the Chicago, Rock Island & Pacific Railway Company, appeals. Reversed and remanded.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

George F. Short, Atty. Gen., Wm. L. Murphy, Asst. Atty. Gen., and Clark Owsley, for defendants in error.

Opinion by JARMAN, C. On February 6. 1925, an application was filed by Robert G. Hickox before the Corporation Commission of Oklahoma for permission to operate a bus line for transportation of passengers for hire between Chickasha and Waurika in the state of Oklahoma, passing through and stopping at certain stations along the route and designating the time of departures and arrivals at the termini, and the charge per mile therefor. Protest was duly filed by the

Chicago, Rock Island & Pacific Railway Company, showing that it operated its trains upon regular schedules between and through said termini and intervening stations, in all respects sufficient for the transportation of passengers, and that its facilities are adequate for such purpose. On May 20, 1925, there was filed with the Commission articles of agreement in which it is shown that E. A. Sharpe is a partner of petitioner in the operation of the proposed bus line, and he was made a party to the proceeding. A hearing was had on March 3. 1925, and, among other things, the Commission found:

"That public convenience and necessity are shown by the evidence in support of the application herein to justify and require the issuance of a certificate of public convenience and necessity to the said Robert G. Hickox and E. A. Sharpe * * *"

—and ordered that a certificate of public convenience and necessity issue to applicants, from which protestant has appealed; and it assigns as error that the order is not supported by sufficient or competent evidence; is contrary to the evidence; is unjust, unreasonable, and arbitrary; is contrary to law and violative of the rights of protestant under the state and federal Constitutions.

The only witnesses were petitioner, Hickox, and a Mr. Stewart, passenger agent for protestant. The former introduced the time of departures and arrivals of the bus at the termini, but none for its intermediate points along the proposed route. He testified that the proposed route was parallel with and served by the protestant with railway trains —four each way, every day; that he had operated, during the months of January and February, 1925, a bus line between Comanche and Waurika, hauling 476 passengers during the former, and 555 during the latter month; that his loss on such operation was $250 per month, and that this application is for an extension of the line, north to Chickasha: that about 40 per cent. of his present business is from towns to towns; and further testified:

"Q . You think this business would be self-supporting if permit were given it? A. Yes, sir. * * *

"Q. You still think it is a necessity to have other transportation in there? A. Yes, sir; I believe I will wipe out the loss with it."

Protestant introduced its time card showing the schedule of four passenger trains each day, each way, serving the towns and territory affected by the proposed bus line, and that all trains stop at all the towns, except south-bound No. 17 and north-bound

Nos. 18 and 32 do not top at Ninnekah unless to "pick up or let off passengers destined to and from distant points," and the time of these trains at such point is 1:47 a. m., for No. 17; 2:12 a. m., for No. 18; and 2:12 p. m., and 5:41 p. m., for No. 32. The table shows this town is served, south-bound at 7:50 a. m., and 8:44 a. m., north-bound at 1:00 p. m., and 2:12 p. m. All trains stop at Addington except No. 32 north-bound, arriving at 4:02 p. m., which stops as indicated above for Nos. 17, 18, and 32, but is served at 12:29 p. m., 6:35 a. m., and 12:31 a. m. The proposed operation of the bus shows that Addington could not be served by it except a few minutes after 7:30 a. m., and 1:00 p. m., and, being operated in daytime only, could not serve Ninnekah at 1:47 a. m., or 2:12 a. m., to be of convenience and necessity to the traveling public.

This proceeding was had under chapter 113. Session Laws 1923, the material part of which is:

"It is hereby declared unlawful for any motor carrier to operate or furnish service within this state without first having obtained from the Corporation Commission a certificate declaring that public convenience and necessity require such operation. The Corporation Commission shall have power, and it shall be their duty, after public hearing, to issue said certificate as prayed for, or to refuse to issue the same. * * *"

The orders of the Corporation Commission must be reasonable and lawful. based upon findings of fact supported by competent evidence, such findings being conclusive on this court unless manifestly against the evidence. and the question whether they meet the requirements is subject to review on appeal. Ex parte Tindall, 102 Okla. 192, 229 Pac. 125.

"Public" is the opposite of "private," and pertains to the people of a nation, state, or community at large, the general body, indefinitely. or as a whole or entirety. In determining whether public convenience and necessity require the operation of a motor carrier. we must consider the question in the light of the demands of the people of the community at large. or, as a whole or entirety. in the territory affected by the proposed carrier.

In the statute requiring the issuance of a certificate of public convenience and necessity as a prerequisite to the operation of a motor carrier. the word "necessity" is not used in the sense of being essential or absolutely indispensable, but in the sense that the motor vehicle service would be such an improvement of the existing mode of trans-

portation as to justify or warrant the expense of making the improvement. It should be made to appear that the inconvenience of the public occasioned by the lack of motor carrier transportation is so great as to amount to a necessity. Wabash, C. & W. Ry. Co. v. Commerce Commission (Ill.) 141 N. E. 212. No showing was made that the service to be rendered by the proposed bus line would be a marked improvement, or an improvement at all, ever the existing mode of transportation furnished by protestant. No evidence was produced to show the public would be inconvenienced by refusing to permit the bus line to operate, and that the inconvenience would be so great as to amount to public necessity.

To warrant the licensing of additional public utility for transportation purposes, it must appear that the present serving facilities are inadequate and inconvenient to the traveling public, and that the proposed facilities will eliminate such inadequacy and inconvenience. West Sub. T. Co. v. C. & W. T. Ry. Co. (Ill.) 140 N. E. 56. As we view this record, there is no evidence of inadequate service on the part of protestant; no proof of public complaint or of a public demand for additional service; no evidence to support the jurisdictional fact that the public convenience and necessity demand the establishment of this additional line from station to station. In fact, the public is as silent as the tomb on that question. There is no evidence that the points mentioned have no other mode of travel, or that there is a lack of adequate facilities from station to station, but, on the contrary, it is shown the traveling public at these points is adequately served by protestant, day and night, permanently and efficiently, and, by judicial cognizance, at great cost of permanent roadbed, rolling stock. and servants. Of course it does not serve at the doors of those living on the highway—that 40 per cent. of petitioner's business—but does serve the general traveling public from station to station. Some individuals—perhaps a considerable number—would be convenienced by the operation of the bus line; but it is clear from the record that to the great body of the traveling public it would be neither a convenience nor a necessity, much less "a convenience **and necessity**" as contemplated by the act.

It is held in Choate et al. v. Ill. Commerce Commission (Ill.) 141 N. E. 12:

"That a proposed bus line serving the same territory as an established interurban line may accommodate a few. individuals does not justify a certificate permitting it to operate; the convenience and the necessity which the law requires being the convenience and necessity of the public, as distinguished from that of an individual, or any number of individuals."

In West Suburban Transp. Co. v. Chicago & W. T. Ry. Co. (Ill.) 140 N. E. 56, it is said:

"To authorize the Commerce Commission to grant appellant a certificate of convenience and necessity, and authority to operate its lines to serve the same public already served by an existing utility, it was required that it be shown the existing utility was not rendering adequate and convenient service, and that the operation of the bus line would eliminate such inadequacy and inconvenience. In determining that question the primary consideration is the convenience and necessity of the public. Pub. Utilities Co. v. Cleveland, Cincinnati, Chicago & St. Louis Railway Co., 288 Ill. 502, 123 N. E. 547. Whether the public convenience and necessity require the establishment of a new transportation facility is not determined by the number of individuals who may ask for it. The public must be concerned, as distinguished from any number of individuals. Pub. Utilities Co. v. Toledo, St. Louis & Western Railroad Co., 286 Ill. 582, 122 N. E. 158."

Petitioner and protestant cite the case of Ex parte Tindall, 102 Okla. 192. 229 Pac. 125, in support of the contention of each. That was a habeas corpus action by Tindall to regain his liberty from arrest for violation of the act under consideration, and does not apply to the instant case. However, since both have cited it for our consideration, we find therein the following trite excerpts:

"The Corporation Commission is not permitted to exercise any of the powers vested in it by the act, unless, as a fact, the public convenience and necessities require the exercise of such power. The question of the public convenience and necessities thereby become the decisive question of fact, to be determined from the evidence, and if the Corporation Commission be unreasonable in its finding at to such fact, * * * then the party aggrieved * * * has a right of appeal to this court for a judicial inquiry and review as to the sufficiency of the evidence and the reasonableness of the order. * * *

"The public has a voice in the enforcement of this act and the right to speak whenever its interests are not subserved. * * * and has a voice as to whether its necessities and convenience require that one, two. or three shall be licensed to render the required service, or that none is required.

\* \* \* It is not that the petitioner or any other private concern has a vested right, \* \* \* but that the public, from the standpoint of its convenience and necessities \* \* \* and a voice as to how much of such service it needs," etc.

The public has not spoken on the question of its convenience and necessity in this case, neither has applicant shown that the public demands the installation of this additional service from station to station, already served by protestant, nor has he shown that the service of protestant is inadequate and inconvenient, or that the proposed service by his bus line would eliminate public inadequacy and inconvenience, if such existed; there is no competent evidence to support the order directing the issuance of a certificate of public convenience and necessity.

The order of the Corporation Commission is reversed, and the cause remanded, with directions to disallow applicant's petition.

By the Court: It is so ordered.