[File No. 6431.]

IN THE MATTER OF THE APPLICATION OF THE TRI-CITY MOTOR TRANSPORTATION COMPANY, for Authority to Furnish Service Between Carrington, North Dakota and Minot, North Dakota, and Between Minot, North Dakota and New Rockford, North Dakota, and Between Turtle Lake and Underwood, North Dakota.

TRI-CITY MOTOR TRANSPORTATION COMPANY, a Corporation (also known as Elsholtz Tri-City Lines, Inc.), Appellant, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation and Minneapolis, St. Paul & Sault Ste. Marie Railway Company, a Corporation, Respondents.

(270 N. W. 100.)

120

Opinion filed November 13, 1936.   Rehearing denied December 12, 1936.

*P. B. Garberg,* and *Henry C. Stiening,* for appellant.

*Murphy, Toner & Kilgore, R. H. Bosard,* and *O. A. Bjorklund,* for respondents.

*J. A. Heder,* amicus curiæ.

BURKE, Ch. J.  The Tri-City Motor Transportation Company, a corporation, having made application for a class A certificate of public convenience and necessity to operate motor trucks as common carriers of property in intrastate service from the city of Carrington to the city of Minot, except from and to and between Velva and Minot and intermediate points, under the provisions of chapter 164 of the Session Laws of North Dakota for 1933 the Board of Railroad Commissioners, after a hearing, granted such certificate on November 9, 1934.  Thereafter at a rehearing further testimony was taken upon which the Board of Railroad Commissioners cancelled said certificate.

On petition a third hearing was ordered at which further testimony was taken and on December 3, 1934, the Board of Railroad Commissioners granted a class A certificate of public convenience and necessity to the said Tri-City Motor Transportation Company to furnish motor freight service between Carrington and Minot, serving all points intermediate except from and to and between Velva and Minot and intermediate points.  The proposed service has the following terminals, Carrington at one end and Minot at the other, with all intermediate towns on the Soo Railway now obtaining service from the railroad and the truck service now being rendered by applicant.  Minot and Carrington are both on the main line of the Soo Railroad 116 miles apart.

From the order granting the certificate there was an appeal to the district court of Ward county, which court found as facts: "That the appellant, Minneapolis, St. Paul & Saulte Ste. Marie Railroad Company, now is and for many years last past has been conducting the said transportation business over its line of railway extending between the cities of Minot and Carrington, North Dakota. . . . That the appellant, Minneapolis, St. Paul & Saulte Ste. Marie Railway Company, now is and has been at all times since the first hearing before

the Railroad Commission upon the application of respondent aforesaid, operating a tri-weekly freight service between the towns of Carrington and Harvey, upon the line of railway aforesaid, and furnishing daily service by freight train upon said line between Minot and the said town of Harvey. In addition the said railway company has been furnishing express, baggage and through-freight train service daily and otherwise over its said line of railway between Minot and Carrington aforesaid. . . . That the transportation service so being furnished by the appellants in the territory aforesaid is reasonable and adequate for the trade and business in said territory."

Judgment for defendants was duly entered upon the findings and conclusions and from which the petitioner duly appeals.

At the first hearing before the railroad commissioners Mr. E. A. Ward, manager of the Tri-City Motor Transportation Company, testified at great length and stated that "The freight service to be rendered by our company to the territory intermediate between Carrington and Minot will be with faster dispatch than the United States mail, this is accounted for because of our peculiar favorable lay-out as to operations, the hub of which will be Carrington. Our operations from Minot to Carrington and intermediate points, excluding Velva and Sawyer, . . . will be 2:30 P.M. out of Minot and into Carrington at 8:15 P.M. that evening in time to connect with the Carrington-Fargo operation, according Minot over-night service at Fargo. . . . Minot jobbers will be accorded an express service at freight rates into Carrington, New Rockford, Devils Lake, and Grand Forks territories, as well as to Fargo." He offered exhibits showing the proposed service. He stated that the freight service between Minot and Carrington was tri-weekly by rail and the proposed motor truck service was daily except Sunday and faster than express or mail.

The only witness in opposition was Mr. Christianson of Minot, who stated that there has been a daily rail freight service established between Minot and Carrington. When asked when this service was inaugurated he said: "This morning, I am told." His principal objection was that it was unfair to the jobbers in Minot and would result in a duplication.

The railroad commissioners state in their findings of fact that:

"At the hearing on May 10th (second hearing) applicant did not

offer much evidence and took the position that on account of a certificate already having been issued no further (evidence) was needed by the applicant. . . .

"At the hearing on August 6th the protestants offered testimony almost identical with that offered by protestants at the time of the May 10th hearing.

"The applicant introduced four exhibits giving a complete summary of the business done between April 15th and May 1st. . . . (and states that) it is conclusively shown that a large number of shippers are using the trucking service and that the increase in tonnage has been steadily upward month after month. . . . It is shown that 52 shippers of the city of Minot had used this service making a total of 209 (309) shipments from the city of Minot alone on the route between Minot and Carrington. The exhibit also shows a considerable number of shipments from Minot carried over the applicant's line to various other points in central North Dakota, points not on the trucking route in question herein.

". . . for the period April 15th to May 1st, 12,449 pounds of freight were hauled from Minot back into the territory; for the month of May it increased to 33,448 pounds; for the month of June it increased to 50,000 pounds; and for the month of July it was 66,956 pounds. The tonnage hauled into Minot for the last half of April was 116,744 pounds; for the month of May, 258,149 pounds; for June, 248,766 pounds; and for July, 244,547 pounds. The tonnage in and out of Minot for the last two weeks of April totals 125,193 pounds; for the month of May, 291,597 pounds, June 300,900 pounds and July, 311,000 pounds. In view of the large amount of tonage moved each month the Commission must take that fact into consideration in determining whether or not a showing of public convenience and necessity has been established.

"Several witnesses testified in behalf of the applicant, among them being E. A. Ward, Manager of the Tri-City Motor Transportation Company. Another witness G. L. Hope, an automobile and implement dealer in Fessenden, testified that the proposed service was used by practically all of the business men in the city of Fessenden, and also that the service was much faster from the west by truck than by rail.

".   .   . Carl C. Harr of Martin, North Dakota,   .   .   , stated he had not used the service to any great extent only when he needed fast shipments.

"R. J. Coughlin, of Minot, North Dakota, testified   .   .   . that he used the trucking service to quite an extent as his company had bulk oil stations at some of the places along the route described in the application.   .   .   .

".   .   . it is the opinion of the Commission that the applicant has made sufficient showing to justify the granting of the certificate prayed for. Therefore, the Commission finds that the applicant has established public convenience and necessity for the service proposed to be furnished as prayed for and a certificate should be issued upon the following conditions:"
then follows the conditions upon which the certificate was granted.

A great deal of testimony was taken at the three different hearings, all of which was considered by the railroad commissioners and certified to the district court on appeal.

There is no conflict in the testimony, excepting a number of witnesses gave in evidence their opinion that the proposed service was a public convenience and necessity and a number of other witnesses gave as their opinion that it was not necessary and that the service furnished by the railway company was adequate.

S. A. Towne, assistant superintendent of the Soo Railway, at the last hearing testified as follows: "Shipments of express move on local passenger trains daily except Sunday. Shipments by freight have tri-weekly service between Carrington and Harvey and a daily freight schedule between Harvey and Minot. The only points that have daily merchandise freight service are between Minneapolis and Glenwood and between Harvey and Portal."

This testimony is not disputed and it follows that there is daily freight service between Minot and Harvey and a tri-weekly service between Harvey and Carrington.

Carrington, Harvey, and Minot are all on the main line of the Soo Railway in a fine, well settled agricultural country.

Witness Hope testified that in the implement and automobile business there are a lot of special orders and emergency calls for parts

for replacement, which necessarily had to be shipped by express, thus making the service very expensive for the public.

Section 8 of chapter 164, Session Laws of North Dakota for 1933 provides: "If the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof it may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, or may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require; otherwise such certificate shall be denied. Before granting a certificate to a common motor carrier, the commission shall take into consideration existing travel upon said route, the increased cost of maintaining the highway concerned, the effect on other essential forms of transportation, and existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

This foregoing provision is a restriction upon the powers of the railroad commission in granting the certificate, that is, if the service already furnished or that could be furnished by the existing transportation facilities is reasonably adequate the commission shall not grant the certificate. In determining the question as to whether the certificate should be granted or not the commission shall take into consideration existing travel upon said road, the increased cost of maintaining the highway concerned, and the effect of granting a certificate of public convenience and necessity for the proposed motor transportation service upon an existing common carrier serving the same territory. Superior Motor Bus Co. v. Community Motor Bus Co. 320 Ill. 175, 150 N. E. 668; Lake Shore Electric R. Co. v. Public Utilities Commission, 115 Ohio St. 311, 154 N. E. 239; Pottsville Union Traction Co. v. Public Serv. Commission, 67 Pa. Super. Ct. 301, 307; Gilmer v. Public Utilities Commission, 67 Utah, 222, 247 P. 284; East End Traction Co. v. Public Utilities Commission, 115 Ohio St. 119, 152 N. E. 20; Royal Green Coach Co. v. Public Utilities Commission, 110 Ohio St. 41, 143 N. E. 547; Chicago, R. I. & P. R. Co. v. State, 123 Okla. 190, 252 P. 849; Allegheny Valley

Street R. Co. v. Greco (Pa.) P.U.R.1917A, 723; Coney Island Motor Bus Corp. v. Public Utilities Commission, 115 Ohio St. 47, 152 N. E. 25; Scioto Valley R. & Power Co. v. Public Utilities Commission, 115 Ohio St. 358, 154 N. E. 320; State ex rel. Krakenberger v. Department of Public Works, 141 Wash. 168, 250 P. 1088.

Reason for the rule—"It may well be that a railroad company has constructed a railroad from a central point. . . . to some outlying and undeveloped territory. For a hundred miles of that distance the country may be well developed and thickly populated, while for another hundred miles or more the country may be sparsely settled and almost wholly undeveloped. The railroad is, however, making it possible to develop and to populate the undeveloped and sparsely settled portion of the country. It does so by drawing upon the income which it derives from the well-developed and thickly settled portion of its line of railroad. Through the thickly populated territory the state later constructs a concrete highway to accommodate those that live in that territory. The auto bus owner now conceives the idea that it would be profitable to operate an auto stage line through the thickly settled portion of the country and over the concrete highway. In order to carry his proposition into effect, he applies to the commission for a certificate of convenience and necessity to operate a stage line as a common carrier once a week. The commission, after investigation, finds that such a service would be expedient and beneficial, grants his request, and issues a certificate of convenience and necessity to him. Within a few days or weeks after the certificate is issued, however, the owner of the stage line increases the service from one trip each way each week to a daily trip each way or as many trips as he may elect to make. In making the weekly trip he may not seriously have affected the receipts of the railroad, while in making daily trips he may so reduce its receipts as to make it impossible to pay the operating cost of the railroad. Its rates must thus be increased or it must go into the hands of a receiver, while the bus line is reaping a large reward by serving only territory already served by the railroad company. The railroad rates may thus have to be increased to such an extent that those living in the sparsely settled territory can no longer afford to pay the rates, and thus development must cease altogether. The Utilities Act was conceived

to prevent just such unfair and destructive competition, and the commission is the agency that is created with power to regulate and to adjust such contingencies when they arise." Gilmer v. Public Utilities Commission, 67 Utah, 222, 247 P. 284, supra.

Where a proposed route for motor bus transportation approximately parallels existing traction lines, and the traction company has made no net revenue over operating expenses and taxes during the past five years, the public utilities commission should consider such fact, in so far as the depletion of revenues might necessitate later abandonment of the traction lines. East End Traction Co. v. Public Utilities Commission, 115 Ohio St. 119, 152 N. E. 20, supra.

"The convenience and necessity which the law requires to support the public service commission's order for the establishment or extension of motor vehicle transportation service is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals, and this is the primary matter to be considered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect." 42 C. J. 687, § 121.

The method of appeal from orders and decisions of the railroad commission is provided in that part of § 29, chapter 164, Session Laws of 1933 which reads as follows: ". . . and appeals from such orders and decisions may be taken by any party to the district Court of the county where such hearing was held unless otherwise provided for in this Article, in the same manner and under the same terms and upon the same conditions provided for by §§ 4609c1 to 4609c56 inclusive, Supplement to the 1913 Compiled Laws of North Dakota, with the exception that the appellant shall be entitled, on demand, to a trial de novo in the district court."

This section makes the first forty-six sections of the Public Utilities Act applicable to chapter 164 of the Session Laws of 1933, except that under said chapter 164 the appellant is entitled, on demand, to a trial de novo in the district court. Under § 4609c34, 1925 Supplement to the 1913 Compiled Laws "Any party to any controversy heard by the commissioners feeling aggrieved by the decision or by the entry of any final order of the commissioners therein may appeal therefrom (to) the district court . . . " and § 4609c35 provides

"On such appeal the lawfulness of the decision or final order shall be inquired into and determined on the record of the commissioners as certified to by it. No new or additional evidence shall be taken on such appeal or introduced in evidence by any party to such hearing on appeal in the district court. . . . The commissioners, any public utility or person or complainant may after the entry of judgment in the district court in any such action, prosecute an appeal to the supreme court in this state. Such appeal shall be prosecuted as appeals from the judgment of the district court in civil cases except as otherwise provided in this act. The record and testimony and exhibits, certified to by the commissioners and filed in the district court . . . shall constitute the record on appeal to the supreme court. · The general laws relating to appeals to the supreme court shall, so far as applicable and not in conflict with the provisions of this act, apply to appeals taken under the provisions of this act."

In this case the appellant made no demand for a trial de novo but the entire record of each of the three hearings· was certified to and considered by the district court on appeal, and on appeal from the district court the entire record is certified to the supreme court and if the trial de novo, which may be demanded by appellant, means a review of all the evidence in the entire case, as provided in section 7846, for appeals in cases tried without a jury, then there was a trial de novo in the district court.

That part of § 7846 relating to appeals in cases tried without a jury reads as follows: "But if the appellant shall specify in the statement that he desires to review the entire case, all the evidence and proceedings shall be embodied in the statement. . . . The supreme court shall try anew the question of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial, and either affirm or modify the judgment or direct a new judgment to be entered in the district court; the supreme court may, however, if it deem such course necessary to the accomplishment of justice, order a new trial of the action."

We are of the opinion that that part of § 29, chapter 164 of the

Session Laws of 1933, which provides for a trial de novo on demand, means a trial on appeal as in cases tried without a jury, that is, upon all the evidence taken before the commission upon which they made their findings. This construction harmonizes with section 4609c35, 1925 Supplement, which provides that "No new or additional evidence shall be taken on such appeal or introduced in evidence by any party to such hearing on appeal in the district court."

The findings of the railroad commission show that the testimony taken at the first hearing was considered at the second hearing and the testimony taken at all the hearings was considered at the last hearing. It was all certified to the district court where there was a trial on the entire record and the entire record was certified to this Court on appeal.

This is the proper procedure under that part of section 4609c35, which reads as follows: "The record and testimony and exhibits, certified by the commissioners and filed in the district court in any such action, together with a transcript of the proceedings in the district court shall constitute the record on appeal to the supreme court."

No demand for a trial de novo was made on appeal to the supreme court and the case is here with the same force and effect as any other case on appeal where no demand for a trial de novo is made.

The first question for the Court to consider on appeal under § 4609c35, 1925 Supplement to the 1913 Compiled Laws is, is the decision or final order lawful? The lawfulness, under the decisions, means that the railroad commissioners had jurisdiction to render the judgment or order and that it was not unreasonable or arbitrary. State v. Great Northern R. Co. 56 N. D. 822, 219 N. W. 295; Lillegard v. Great Northern R. Co. 66 N. D. 541, 267 N. W. 723; Chicago R. Co. v. Commerce Commission, 336 Ill. 51, 167 N. E. 840, 67 A.L.R. 938. See extensive notes in 67 A.L.R. page 957. Re Waterloo, C. F. & N. R. Co. 206 Iowa, 238, 220 N. W. 310; Chicago, R. I. & P. R. Co. v. State, 123 Okla. 190, 252 P. 849, supra; Central Ohio Transit Co. v. Public Utilities Commission, 115 Ohio St. 383, 154 N. E. 323; Coney Island Motor Bus Co. v. Public Utilities Commission, 115 Ohio St. 47, 152 N. E. 25, supra; Chicago Motor Coach

Co. v. Chicago, 337 Ill. 200, 169 N. E. 22, 66 A.L.R. 834; State ex rel. Missouri P. R. Co. & Missouri P. Transp. Co. v. Public Serv. Commission, 327 Mo. 249, 37 S. W. (2d) 576, 75 A.L.R. 232; Woodrich v. Northern P. R. Co. (C. C. A. 8th) 71 F. (2d) 732, 97 A.L.R. 401; Wabash, C. & W. R. Co. v. Commerce Commission, 309 Ill. 412, 141 N. E. 212; Alabama Pub. Serv. Commission v. Mobile Gas Co. 213 Ala. 50, 104 So. 538, 41 A.L.R. 872 and notes in 41 A.L.R. 889.

In passing upon the question of the granting of a certificate of public convenience and necessity the railroad commission is required by law to take into consideration existing travel, the increased cost of maintaining the highway concerned, the effect on other established forms of transportation, and existing transportation facilities and if it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate the order granting the certificate is unlawful and contrary to mandatory provisions of the statute.

The freight service on the line in question was tri-weekly before the first hearing. Apparently because of that first hearing the service between Minot and Harvey was made daily; but the service between Harvey and Carrington was continued tri-weekly. Taking into consideration the existing travel between Harvey and Minot, the increased cost of maintaining the highway, the effect on the Soo Railway in loss of business, it would seem that daily service of freight between Harvey and Minot is reasonable and adequate service, and that the order and judgment granting the certificate of public convenience and necessity between Minot and Harvey was properly reversed in the district court.

There is no explanation in the record why the daily service was not furnished between Harvey and Carrington. Harvey and Carrington and intermediate towns are on the main line of the Soo Railway, in a well settled, fine agricultural country, and the record shows necessity for quick shipments of farm and all kinds of machinery, just as great necessity as it shows between Minot and Harvey.

Under § 8, chapter 164, Session Laws 1933, the commission has power to grant the proposed service in whole or in part and on the record in this case we are of the opinion that the public in this terri-

tory' is entitled to a daily freight service and the judgment of the railroad commission in granting the certificate of public convenience and necessity between Carrington and Harvey should have been affirmed.

The judgment of the district court in so far as it holds that the daily freight service between Minot and Harvey is adequate service is affirmed and in so far as it holds that the tri-weekly service between Harvey and Carrington is adequate service is reversed, and the case is remanded to the District Court for further proceedings according to law.

BURR, NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.