Marshall, C. J.-
 

 This is an error proceeding from an order of tbe Public Utilities Commission. The Buckeye Special Transit Company, a corporation, on June 25, 1925, applied for a certificate of public convenience and necessity to operate motor transportation passenger service “over all public highways, roads and streets in the state of Ohio,” an irregular route. Upon hearing, the application was granted. The pertinent parts of the order of the commission under review show that the applicant is located in Columbus, Ohio, and the commission finds “that there is a great and urgent need for, and that public convenience and necessity will be served by the establishment of the operation of a special, or irregular, service in the transportation of persons by motor vehicles.” After reciting certain provisions of the statutes at length and the reasons for the commission’s conclusions, the order was in the following language:
 

 “Ordered: That, upon the payment to the treasurer of state of the taxes prescribed for the motor vehicles so to be used and the filing with
 
 *314
 
 this commission of the insurance policies required, a certificate be granted the Buckeye Special Transit Company to operate a motor transportation company, carrying passengers as a common carrier, upon irregular routes over all public highways, roads, and streets in the state of Ohio, subject to the rules and regulations of this commission and conditioned :
 

 “(a) That no such operation shall be made between a point of origin and a point of destination which are located upon the route of an existing transportation company; and
 

 “(b) That local subdivisions may make reasonable police regulations within their respective boundaries not inconsistent with the provisions of Sections 614-84 to 614-102 of the General Code of Ohio.”
 

 A large number of transportation companies, including steam railroads, electric railroads, and motor transportation companies, filed protests, and a number of them have prosecuted error to this court. By this error proceeding the order of the commission is challenged on both procedural and fundamental grounds. We shall not discuss all of those grounds in detail, but will refer to sufficient of them to support the reasons for the conclusions we have reached.
 

 Notice of the filing of the application is in all cases required by Section 614-91, General Code, and that section is specific as to the kind and character of notice where the operation is between fixed termini or over a regular route. There are certain general requirements which are clearly applicable to all routes and proposed operations. Among such general provisions it is required:
 

 
 *315
 
 “The applicant shall give notice of the filing of such application by publication made once a week for three weeks immediately prior to the date set for said hearing, in a newspaper of general circulation published at the county seat of each county in or through which the applicant proposes to operate, or in one newspaper published in and of general circulation throughout the territory in or through which the applicant proposes to operate. Such published notice shall state the fact that such application has been made, the route proposed to be operated, the number of motor vehicles to be used, the number of trips to be made daily, and the name and address of the applicant.”
 

 The applicant has sought to comply with this requirement by publishing notice in the Cincinnati Enquirer, the Cleveland Plain Dealer, the Columbus Dispatch, the Dayton Journal, and the Steuben-ville Herald Star. While it is very clear that the commission is only required to give written notice to all motor transportation companies, where the applicant seeks to operate between fixed termini or over a regular route, the protestants insist that no showing has been made that the proper publication has been made in all of the counties of the state.
 

 Questions of the sufficiency of notice and of the kind and character of notice to be given are legislative problems, and, when the Legislature has spoken, the courts may not properly interfere unless a question of due process is presented. Inasmuch as the operation is authorized in every county of the state and over every highway in the
 
 *316
 
 state, whether improved or unimproved, and over the streets of every city and village in the state, the statute cannot be said to have been complied with by publication made only in newspapers having general circulation in all the counties of the state, but publication must necessarily be made in some newspaper published at each of the county seats of the 88 counties of the state. The statute gives the alternative of publishing in newspapers published in each of the county seats or “in one newspaper published in and of general circulation throughout the territory in or through which the applicant proposes to operate.” The applicant apparently realized that no single newspaper has general circulation in all the counties of the state and has sought to remedy this difficulty by publishing in five newspapers published in different sections of the state. The commission states in its order that there has been a substantial compliance with the law. As to whether a substantial compliance with the procedure provided by statute for the guidance of the commission is sufficient, counsel for the respective parties are at variance. In this case it cannot be said that there has been a substantial compliance, but rather it must be said that there has been a total failure to observe the requirements. It is urged by the applicant that it would be a matter of tremendous expense to make publication in a newspaper published at each county seat. It may be answered that the applicant is seeking a franchise covering a tremendous amount of territory. If the certificate has value in each of the counties of the state, the statute
 
 *317
 
 must be respected and that expense be incurred or any counties omitted must be eliminated from the application and the order. The statutory provisions as to notice are either mandatory or directory. To hold that they are directory would be to give the commission unlimited latitude and the procedure would thereby be rendered chaotic.
 

 It is further claimed that the published notice is deficient by reason of the route being stated in such general terms. The applicant answers this proposition by stating that it is a new proposition and that it is only a desire to operate “as occasion requires.” It is therefore difficult to see how there could be a finding of public convenience and necessity, when the occasions for the employment of the service are yet problematical and admitted to be casual. If the statute is indefinite, and its requirements are such that it is difficult to make strict compliance, this cannot permit the commission to enforce only substantial compliance; but, on the other hand, if compliance is difficult, or too expensive to justify compliance, the remedy must be found in an amendment of the statute itself. Substantial compliance cannot be found where there is a clear omission of some definite specific procedural requirement.
 

 The foregoing observation applies not only to the manner of giving the notice, but applies with equal force to the statements of fact which the application is required to contain. In addition to the facts required to be shown in the application by the statute, the commission, under the power to adopt rules, given it by Section 614-90, General
 
 *318
 
 Code, has provided in rule 5, subd. J, for “statements showing names and addresses of persons, firms, or corporations now furnishing similar service by means of motor propelled vehicles, steam or electric railways, or boat lines between any of the points or along any portion of the route proposed to be served.”
 

 The applicant seeks to avoid the force of these and other observations by urging that this is an irregular route and that the statutory requirements and the rules made by the commission can have no reasonable application thereto. It is the contention of counsel for the applicant that a regular route is one between fixed termini and that an irregular route is one not between fixed termini. This definition is wholly inconsistent with the definitions stated in Section 614-84, General Code, from which we quote:
 

 “The words ‘regular route’ shall be understood to refer to that portion of the public highway over which any motor transportation company usually, or ordinarily operates or manages any motor propelled vehicle. The words ‘irregular route,’ shall be understood to refer to that portion of the public highway over which is conducted any other operation of any motor-propelled vehicle by a motor transportation company.”
 

 It will therefore be seen that, although the term “fixed termini” appears in an earlier provision of the same section, those words have no force or effect in determining whether or not a route is regular or irregular. A careful analysis of the definitions of the two kinds of routes fails to dis
 
 *319
 
 close any well-defined distinction between the two. It is not possible to determine with any certainty the character or the limitations of an irregular route. Counsel have endeavored to define it, and have suggested numerous conditions that might or might not constitute such a route, but neither the views of counsel, nor the orders of the commission, nor the judgments of courts, are permitted to read into a statute new provisions which will render it definite, when the Legislature itself has given a definition which is wholly indefinite. If the Legislature meant that irregular route should refer to that portion of the highway where casual or unusual operations are carried on, or where private contracts of carriage are performed, or if the Legislature meant that it should refer to universal or unlimited operations, it would not have been difficult to find language which would express that purpose. The statute relating to motor transportation has in different connections mentioned each and all of these conditions, thereby showing that these conditions were not strangers to the subject, and it is at least significant that the Legislature refrained from making those characteristics the test of an irregular route.
 

 In its order in this case the commission has attempted to declare its notions of an irregular route as applying “where the operator only served and hauled from and to different places as he had a call for such service, which has been termed an irregular service.” This declaration refers to an irregular
 
 service,
 
 which is not referred to at all in the statutes, and loses sight of the statutory
 
 *320
 
 term “route.” It therefore seems necessary for the Legislature to furnish a clear specific definition of an “irregular route.”
 

 Another difficulty presented by this record is that Section 614-87, General Code, requires the commission to take into consideration other existing transportation facilities in the territory for which a certificate is sought. Counsel for the applicant seek to avoid this requirement by stating that this particular service is of an entirely different kind and character from the service rendered by other transportation companies and that therefore this statutory requirement has no application. The requirement cannot be so easily overlooked. The new service, while essentially different in its conveniences, is nevertheless transportation of persons, coming in direct competition with regular service, thereby reducing the profits of the regular service, and, for anything which may now be known, rendering the same so unprofitable. as to drive it from the field. The requirement of taking other existing transportation facilities in' the territory into consideration cannot therefore be overlooked, unless the existing facilities are not reasonably adequate. Slight additional conveniences to certain persons or classes of persons, which are admitted to be of a casual nature and as yet wholly undeveloped, should not be permitted to disarrange and possibly destroy other valuable existing transportation facilities.
 

 Another provision found in Section 614-87, General Code, renders the situation still more difficult:
 

 “On finding of the Public Utilities Commission
 
 *321
 
 that any motor transportation company does not give convenient and necessary service in accordance with the order of snch commission such motor transportation company shall be given a reasonable time, not less than sixty days, to provide snch service before any existing certificate is canceled or a new one granted over the route mentioned in the finding and order of or hearing before the Public Utilities Commission.”
 

 The commission has uniformly ruled in hundreds of cases that an existing motor transportation service pre-empts the route covered by the certificate, and this court has affirmed this interpretation by the commission. If the order in the instant case is permitted to stand, it is apparent that the entire state of Ohio and all its streets and highways are pre-empted by the Buckeye Special Transit Company, and no other similar service could be permitted over any of such streets and highways without a showing of inadequate service and an opportunity within sixty days to provide the same. It may be said that a monopoly of the casual and unusual transportation service covering the entire state is no more harmful than a monopoly of a single regular route between fixed termini; but, if such a wholesale pre-emption of the streets and highways of the state is to be permitted, it should have its inception in some definite provisions of the statute to that effect, which may then be reviewed by this court in a regular proceeding, rather than in action of the commission supplementing the present provisions of the statute and supplying many glaring omissions by inference
 
 *322
 
 and implication with the concurrence of this court. It is so well known as to be the proper subject-matter of judicial notice that livery motor service is provided in many portions of the state, and that many owners of motor vehicles are now rendering service under private contracts, and it is impossible under the present condition of the statutes to foresee the effect of such action upon such service, which is now admittedly of a private nature.
 

 It is sought to insure the legality of the order of the commission by excepting from its provisions any operation between a point of origin and a point of destination which are located upon the route of an existing transportation company. This provision is so easily avoided that the exception can have no value to existing transportation companies. To do so it is only necessary to have either the point of origin or the point of destination at some slight distance from the route of an existing transportation company.
 

 The whole subject of public motor transportation is new and it is not surprising that the legislation on this subject has failed to meet all of the problems presented, and it is quite certain that further legislation will be required in order to definitely authorize the commission to grant such wholesale service without compliance with all of the requirements of notice and statement and of proof of necessity and convenience which are applicable to smaller and regular operations.
 

 In addition to these matters there are other observations of a more fundamental nature. It
 
 *323
 
 may be inquired whether the service proposed to be rendered by this applicant is of such public nature as to constitute the applicant a common carrier, and whether the applicant is not after all only a private contractor. The distinction between a public and a private carrier, as applied to motor transportation service, was discussed in the case of
 
 Hissem
 
 v.
 
 Guran,
 
 112 Ohio St., 59, 146 N. E., 808, and the principles therein stated so far as applicable need not be repeated here. It is urged that, if such service is to be rendered at all, it is desirable that it be rendered by a certificated company, subject to the provisions of taxation and insurance, thereby affording greater security to the patrons of such service. It is further stated in that connection that certain classes and interests demand and will employ special forms of transportation to conform to their special and casual needs. It may be answered that if such special classes and interests demand special service, the regular lines of transportation of various types, and the general public, should not be required to bear the burdens of insuring such transportation hazard. Such special and casual service necessarily saps the patronage of regular transportation facilities, and therefore constitutes an economic burden, which must be borne in the first instance by the regular line, but eventually be absorbed by the traveling public. The testimony of the witnesses in this case gives numerous instances which indicate that the proposed service displaces regular certificated service, the only difference being that it is proposed to furnish certain added conveniences. These added conveniences are forbidden specifically to the regu
 
 *324
 
 lar service, and it goes without saying that the extra service is sufficient inducement to secure the business of conventions and other public assemblages and that the regular transportation lines will only carry the subnormal traffic. The regular lines will therefore be required to make regular trips in both fair and foul weather, and when there is no unusual traffic, but on all occasions when there is an unusual traffic the casual service will be employed and probably take the cream of the business. The special service would operate only on call and would only be compulsory upon the applicant when a minimum load is offered and where the profit is assured. Thé regular service would operate upon a fixed schedule, with uncertain patronage, probably losing that portion of its uncertain patronage which might constitute its profit.
 

 The statute requires that the commission shall find that there is not merely a public convenience to be served, but also a public necessity. It may therefore be inquired whether the service is one which the public reasonably
 
 requires
 
 or is something which a small portion of the public
 
 desires.
 

 A comprehensive survey of all the legislation on the subject of motor transportation regulations shows the difficulties in which irregular routes and casual service are involved. Section 614-2, G-eneral Code, in defining a motor transportation company, draws a distinction between a public utility and a private contract carrier. Section 614-84 again attempts to define a motor transportation company and again states that it will not include any private contract carrier.
 

 
 *325
 

 We
 
 are therefore confronted with the fundamental inquiry as to whether or not this is transportation of such public character as to come within the purview of the regulatory statutes. The testimony is not sufficiently comprehensive to permit a definite determination of this point, neither does the record call for such determination. It is sufficient to say that there are certain general provisions of the statute which have not been complied with, such provisions having equal application to both regular and irregular routes; that the testimony is of a general nature, not showing necessity of transportation in all portions and over all streets and highways of the state; that the service proposed to be rendered is of that casual character, and the subject-matter in each instance of private contract, which does not bring the case within the definition of public motor transportation.
 

 The modern paternalistic trend of government toward regulating every avenue of public and private enterprise is shown in this present proceeding, and, while this court is not responsible for the results of such governmental trend, we do at least feel that we have no authority to facilitate such trend by approving omissions of procedural requirements in its inauguration and exercise; neither should we overlook the fundamental principles relating thereto.
 

 The order of the commission will therefore be reversed.
 

 Order reversed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.