Marshall, C. J.
 

 W. A. Wells of Mantua, Portage county, Ohio, filed an application before the-Public Utilities Commission for a certificate to
 
 *712
 
 operate a motor freight transportation service over an irregular route between any point in Ohio and any other point in Ohio, but principally between Cleveland, Ohio, in Cuyahoga county, and Mantua, Ohio, in said Portage county, and also over any highway, street, or alley within the state of Ohio. Notice was published only at the county seats of Portage, Trumbull, Geauga, Summit, and Cuyahoga counties. No notice was given to any other transportation companies other than by publication as aforesaid. The commission set the case for hearing, and gave notice to no other transportation companies of the time and place of hearing. At the time of hearing, evidence was received and a certificate granted in the following language:
 

 “This matter comes on for consideration upon the application of said W. A. "Wells for a certificate of public convenience and necessity to operate a motor transportation company carrying as a common carrier over an irregulár route. Granted, limited as follows: Applicant permitted to pick up any and all freight offered to him for transportation originating in Portage county; Ohio, whose point of delivery is Cuyahoga, Summit, Geauga, and Trumbull counties, and to receive and transport freight from any of the last-named four counties whose point of delivery is Portage county.”
 

 The Erie Railroad Company, the Pennsylvania Railroad Company, the Baltimore & Ohio Railroad Company, the Hocking Valley Railway Company, and the New York Central Railway Company, appeared as protestants at the hearing, but the Erie Railroad Company alone prosecutes error.
 

 
 *713
 
 Three questions are presented: First, the failure to give notice of the pendency of the application, as required by Section 614-91, G-eneral Code; second, the failure to attach to the application a map showing the highway or highways and public places upon and over which such motor transportation company is to operate, and the number and kind of vehicles to be employed; third, failure of the .applicant to offer evidence of public convenience and necessity, and the failure of the commission to take into consideration other existing transportation facilities.
 

 On the first of these points it will be found that the operation is confined to five counties, and it is shown that notice was given by publication in a newspaper of general circulation published in the county seat of each of those counties. The notice required to be given is defined in Section 614-91, and no notice is required to be given upon an application for an irregular route to any transportation company in the territory, other than the published notice. Written notice of the application to other motor transportation companies applies only to an application for a certificate to operate between fixed termini or over a regular route. The statute provides that, at the time of fixing a date for hearing, unless in its discretion it is deemed that such hearing is unnecessary and that the best interests of the public require that the application be granted or rejected without public hearing, the commission shall give the applicant, and all other motor transportation companies operating in the territory, at least ten days notice of such hearing. Beading all of the provisions of the statute
 
 *714
 
 in their proper relation with one another, it would seem that the commission should not be required to do more than the applicant is required to do in the matter of notice to other transportation companies, and that the legislative intent was that the notice to be given by the commission is the same notice required to be given by the applicant, viz. to notify other transportation companies of the time and place of hearing, if the application is for an operation between fixed termini only. We therefore find nothing irregular or unlawful in the matter of the notice.
 

 Relative to the first feature of the third question made, we find evidence of a convenience and necessity to be served in and out of the village of Mantua, but there is no evidence pertaining to any convenience or necessity to be served in any other points in Portage county. In the state of this record there could not, therefore, be any valid certificate in any event which would be more extensive than to permit the applicant to receive freight offered to him for transportation originating in Mantua and to receive and transport freight from other points whose point of delivery is Mantua. If the point of origin and the point of delivery had been confined to Mantua, there would be no valid objection to hauling goods from Mantua to any point in Ohio, or hauling goods from any point in Ohio to Mantua. No valid reason appears in this record why the haul should have been limited to the five counties named, provided a definite and proper point of origin and destination were stated.
 

 The order of the commission is further unreasonable and unlawful in that it does not properly protect the rights, if any, of other regular haulers
 
 *715
 
 of freight, because, for aught that appears in this record, there may be other regular routes between Portage county and the other counties which could be operated by "Wells under this certificate for an irregular operation. If the operation had been confined to Mantua, as point of origin and destination, the record is clear that there are no other regular, operations either in or out of Mantua. Being broad enough to cover any point of origin or destination in Portage county, the order must be held to be unlawful, because of its failure to take into consideration and to properly safeguard other existing transportation facilities. This feature could have been safeguarded by prohibiting the applicant from receiving and discharging freight between points on the line of any regular authorized operation.
 

 The statutory requirement to take into consideration other existing transportation facilities does not necessarily mean that the commission may not under any circumstances duplicate a regular motor truck transportation; neither does it necessarily mean that no motor truck transportation will be permitted between points reached by a rail transportation company. It does mean, however, under the plain language of Section 614-87, that an existing transportation company must have an opportunity to provide the kind and character of service which the applicant proposes to offer. It may well be that the character of service rendered by a rail transportation company which runs only from station to station would not offer the character of service which the public convenience and necessity demand. Such matters are for the determination
 
 *716
 
 of the commission upon evidence presented after an issue made.
 

 Upon the second point urged by the protestant, it is found that the applicant failed to attach a map to the application, as required by Section 614-91. It has been urged on the part of the applicant that, inasmuch as the original application covered the entire state of Ohio, there would have been no advantage in attaching a map. In this view we do not concur. The requirement of attaching a map to the application is quite definite in the statute, and we can see no reason why it should be omitted where the application is irregular and covers the entire state. It is true that at the time of the hearing the application was limited to the five counties named. Even so, the court could not take judicial notice of all of the rail transportation companies operating in that territory, nor of the cities and villages reached by them. Neither can this court take judicial notice of the location of the highways in that territory. Even if the court should have personal knowledge of them, it would not obviate the plain requirement of the statute.
 

 It has evidently never occurred to the applicants for irregular routes that the granting of a certificate gives to the applicant the right to operate over all the roads, highways, streets, and alleys within the territory covered by the certificate, and that at the same time it creates the reciprocal duty on the part of the applicant to operate over those highways, if certificated so to do, whenever called upon for such service. If this certificate had been granted as originally applied for, this applicant would have been compelled to deliver freight to any point in Ohio, at any season of the year, over
 
 *717
 
 roads whether improved or unimproved. Manifestly, there are many points in Ohio where a motor truck could not operate at certain seasons of the year, and yet, if this application had been granted as requested, the applicant would have become bound to render that service, regardless of its difficulties. It must be apparent therefore that the requirement of attaching a map “showing the highway or highways and public places upon and over which such motor transportation company is to operate” is more than a mere formality. An applicant for an irregular route, for his own protection, should attach a map showing clearly and definitely every road, highway, street, and alley over which he desires to operate, so that the extent of his obligation may be definitely known, and so that a schedule of rates and charges could be approved by the commission which could be depended upon by the public and which would not be ruinous to the applicant. It requires no further argument to show that a definite map, giving the information required, is just as important as when the application is for a regular route or between fixed termini. The failure to attach a map to the application is just as fatal as the omission of any other requirement set forth in the statute.
 

 For these reasons, the order of the commission must be reversed.
 

 Order reversed.
 

 Day, Allen, Kinkade, Robinson and Matthias, JJ., concur.
 

 Jones, J., concurs in paragraphs 1, 2, 4, and 5 of syllabus and in the judgment.