Day, J.
 

 The plaintiffs in error seek to reverse the order of the commission as unreasonable and unlawful, upon two grounds:
 

 First, that the record shows no proof of public convenience and necessity to be served by the granting of the certificate to Waldron & Son.
 

 Second, that, even if such convenience and necessity have been shown, the plaintiffs in error, Lloyd Clark and Boyd Clark, doing business as Clark Trucking Company, were entitled to sixty days
 
 *60
 
 time to increase their service, pursuant to Section 614-87, General Code.
 

 The first ground goes to the question of the weight of the evidence. There were only four witnesses who testified in the case. F. M. "Waldron, one of the partners of the applicant company, whose testimony tends to show the necessity for irregular hauling for individuals and firms to and from Montpelier, substantiated his claims by reciting the names of firms, partnerships, and companies from whom he had received requests for such service. His testimony was opposed by that of Lloyd Clark, which tended to a denial of the necessity for such additional service to do irregular hauling in and out of Montpelier. Boyd Clark was present and sworn, but not called as a witness, for the reason that his testimony would be merely cumulative to that given by his brother, Lloyd Clark. Two other witnesses, John Rundell and Frank Water stone, testified as to the good reputation of the applicants, and, upon cross-examination, gave similar testimony as to the protestants.
 

 Without reviewing at length the testimony offered before the commission upon this point of the public convenience and necessity to be served by granting this additional service for irregular hauling in and out of Montpelier, it is sufficient to say that we cannot find that the conclusions of the commission in that regard are manifestly against the weight of the evidence. There is certainly in the evidence considerable testimony to sustain the finding, and for that reason the same is not disturbed.
 

 Coming now to the second and more important question presented by the record: Did the commis
 
 *61
 
 sion err in not giving the protestants and holders of the certificate already issued for irregular hauling to and from Montpelier over the highways of the state a reasonable time, not less than sixty days, within which to furnish the kind of service required, as provided by Section 614-87, General Code?
 

 So much of Section 614-87 as was pertinent to the inquiry, at the time the application was filed, provided as follows: “On finding of the public utilities commission that any motor transportation company does not give convenient and necessary service in accordance with the order of such commission such motor transportation company shall be given a reasonable time, not less than sixty days, to provide such service before any existing certificate is canceled or a new one granted over the route mentioned in the finding and order of or hearing before the public utilities commission.”
 

 Section 614-87, General Code, of which the above-quoted portion is but a small part, is very broad in terms, and contains matter which is applicable both to regular and irregular routes in this state. The practical construction to be given such section in many of its provisions requires confining the same to regular routes with fixed termini. To hold that the sixty-day provision contained in the last paragraph of said section, which is quoted above, applies to irregular routes, as well as to regular routes, deprives the public of any additional service on
 
 cmy
 
 of the passable roads of the state, other than the service offered by the sole possessor of a certificate for an irregular route to and from any municipality in the state.
 

 While this court has heretofore recognized in
 
 *62
 
 many cases the necessity of applying this section to regular routes operating between fixed termini over certain highways, it does not necessarily follow that the same construction is to apply as to irregular routes operating on all of the passable roads in the state, whether congested with travel or not, or in remote and unfrequented portions of the state where service is seldom, if ever, required.
 

 There are many reasons why the Legislature intended that the commission should require that upon the main traveled highways, with congested traffic over the regular routes, no additional service be granted, but that the service already granted should be brought up to the standard required. On the other hand, service over irregular routes to and from a fixed point in the state, over any of the passable highways of the state; is a matter which should be controlled with reference to the needs of the public residing in such community. It is the public good that should control, and not the profits of some present holder of a certificate.
 

 "We are cited to the case of
 
 Coney Island Motor Bus Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 47, 152 N. E., 25. This case related to operation over pre-empted territory by the holder of a certificate over a regular route. To the same effect is
 
 Central Ohio Transit Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 383, 154 N. E., 323. The cases of
 
 Columbus Railway, Power & Light Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 36, 155 N. E., 647, and
 
 Columbus, Delaware & Marion Electric Co.
 
 v.
 
 Public Utilities Commission,
 
 116 Ohio St., 92, 155 N. E., 646, likewise involve regular routes.
 

 The case of
 
 Erie Rd. Co.
 
 v.
 
 Public Utilities Com
 
 
 *63
 

 mission,
 
 116 Ohio St., 710, 157 N. E., 382, 383, construed operations over an irregular route. Paragraph 5 of the syllabus in that case reads: “Where the place or places to or from which an irregular motor transportation route is certificated are served in part by a regular route, the certificate authorizing such irregular route should safeguard infringements upon such regular route and other existing transportation facilities, unless it appears from the evidence that such existing transportation facilities are not reasonably adequate and an opportunity has been afforded to provide such service after sixty days notice, as provided by Section 614-87, General Code.”
 

 An examination of the order granted herein discloses that a full compliance with the above-quoted syllabus was observed in this case, the same providing: “Conditioned, however, that the applicant shall not engage in the same kind and character of service being furnished by existing electric and steam railway lines or by motor transportation companies operating between fixed termini or over regular routes.” It is apparent, therefore, that the commission granted the order in the present case with full recognition of the case of
 
 Erie Rd. Co.
 
 v.
 
 Public Utilities Commission, supra.
 
 As heretofore stated, none of the protestants in that case were holders of a certificate of public convenience and necessity over an irregular route, and the objections here were therefore not involved in that case.
 

 This part of Section 614-87 has heretofore been under consideration by this court in an irregular route case, and the monopolistic result of requiring a compliance with the sixty-day provision recog
 
 *64
 
 nized, in
 
 Railway Co.
 
 v.
 
 Public Utilities Commission,
 
 115 Ohio St., 311, 321, 154 N. E., 239, 242: “If the order in the instant case is permitted to stand, it is apparent that the entire state of Ohio and all its streets and highways are pre-empted by the Buckeye Special Transit Company, and no other similar service could be permitted over any of such streets and highways without a showing of inadequate service and an opportunity within sixty days to provide the same. It may be said that a monopoly of the casual and unusual transportation service covering the entire state is no more harmful than a monopoly of a single regular route between fixed termini; but, if such a wholesale pre-emption of the streets and highways of the state is to be permitted, it should have its inception in some definite provisions of the statute to that effect, which may then be reviewed by this court in a regular proceeding, rather than in action of the commission supplementing the present provisions of the statute and supplying many glaring omissions by inference and implication with the concurrence of this court.”
 

 Summarized, our conclusion is that the commission is not required to extend the sixty-day privilege to the holder of an existing certificate for an irregular route over any of the passable highways of the state, when in the judgment of the commission the public convenience and necessity require that the public involved be allowed additional facilities for irregular hauling and transportation over any of the public highways of the state to and from such community.
 

 The exclusive privilege of using all the passable highways of the state for hauling for hire over an
 
 *65
 
 irregular route is not to be allowed unless tbe public good demands it. In this case the commission has found not only that tbe public good does not demand that such exclusive privilege be extended, but that tbe public good requires that additional service be granted. We think tbe legislative intent justifies the conclusion that tbe portion of Section 614-87, General Code, above quoted, does not apply to irregular routes.
 

 Entertaining these views, we are unable to find that tbe order of tbe commission was either unreasonable or unlawful, and for that reason tbe same is hereby affirmed.
 

 Order affirmed.
 

 Marshall, C. J., Kinkade, Jones, Matthias and Allen, JJ., concur.