BREYER EXCHANGE, INC., APPLICATION OF, IN RE.

Public Utilities Commission.

No. 3205.

230

## ORDER

This day after full hearing, due notice of the time and place of which was given to all parties in interest, this matter came on for consideration upon the application of Breyer Exchange, Inc., to amend Contract Motor Carrier Permit No. 666 by adding W. W. Bolton of Barberton, Ohio as a shipper thereon; the report and recommendation of Attorney Examiner Lewis S. Witherspoon, dated February 21, 1958; the testimony and exhibits introduced into evidence at said hearing; the exceptions filed by the applicant to said report and recommendation of Attorney Examiner Lewis S. Witherspoon; being fully advised in the premises, and in compliance with Section 4903.09, Revised Code, this Commission hereby finds and orders as follows:

The Commission hereby adopts as its own, as if fully rewritten herein, the Attorney Examiner's Summary of the Evidence as contained in his report dated February 21, 1958. It is our opinion that said Summary accurately summarizes the testimony submitted at this hearing.

The Commission is unable to concur in this case with its Attorney Examiner insofar as his discussion, findings, and

recommendation, with the exceptions hereafter specifically noted, and hereby overrules the same and submits the following discussion and findings of its own.

COMMISSION'S DISCUSSION:

This Commission is of the opinion that protestant Bulk Transport Corporation does not possess the certificated authority to serve W. W. Bolton of Barberton, Ohio. The testimony of this witness clearly indicates that no protection of the kind offered by protestant Bulk Transport Corporation is required by this shipper. It is our opinion that Bulk Transport Corporation does not have the equipment suited to the needs of the shipper herein.

The Attorney Examiner in his discussion and findings stated that "Protestant Bulk Transport Corporation does not possess the authority to serve this shipper in the transportation of agricultural limestone which product does not require special equipment nor handling." Protestant Bulk Transport Corporation filed no exceptions to the Attorney Examiner's Report and, therefore, is apparently in agreement with the above-quoted finding.

The remaining protestant, Craun Transportation, Inc., has the authority under Certificate No. 4250 to transport the following:

"(2) Transportation of stone and dolomite, in bulk, in dump trucks, over irregular routes from all points in Seneca and Sandusky Counties, to all points in the State of Ohio and reverse.

"(3) Transportation of asphalt, asphalt coated materials, *agricultural limestone*, bituminous materials, brick, cinders, coal, coke, concrete products, building stone, crushed stone, dirt, empty sacks, gravel, lime, lumber, mortar, plaster, and sand over irregular routes from all points in Seneca County, Ohio to all points in the State of Ohio and reverse."

The shipper desires the applicant to transport "lime and property used in the operation of a lime plant" from Clay Center, Ottawa County, Ohio; Maple Grove Seneca County, Ohio; and Woodville and Gibsonburg in Sandusky County, Ohio.

Protestant Craun's certificate is not sufficiently broad from either a territorial or commodity standpoint to furnish this

shipper *a complete transportation service.* (Emphasis supplied.)

This Commission in many prior decisions involving contract motor carrier permits has held that a shipper is entitled to *a complete service.* (Emphasis supplied.)

It would be unreasonable to require a member of the shipping public to resort to the division of a particular commodity between carriers authorized to operate in various parts of the State and hauling various commodities.

In the application of Kealy Trucking Co. (Case No. 4119, Permit No. 3621) decided March 27, 1957, this Commission stated the following:

". . . In short, it appears that the desire of this shipper for integrated and entire transportation service aimed to move freely and on short notice between various plants of this shipper as well as its customers, constitutes a very reasonable and proper desire and request. The inability of the protestants to meet this kind of a need constitutes an unreasonable deficiency in service and the within application should be granted."

It is our opinion that the above principle enunciated in the *Kealy case* is applicable in this case. The principle was also set forth in the application of Fast Man Delivery (Case No. 4030, Permit No. 3544) decided February 10, 1956, as well as in other decisions of this Commission.

Counsel for the applicant in his exceptions to the Attorney Examiner's Recommendation states that the Examiner "erred in finding that the authority of protestant, Craun Transportation, Inc., under Certificate No. 4250 is broad enough to encompass the proposed movements in bulk from *both* Seneca County and Sandusky County." This Commission is in agreement with the applicant in that protestant Craun does not possess the authority to transport the involved commodities from Sandusky County, Ohio. To this extent the exceptions of the applicant are well taken and are sustained.

Another issue raised at the hearing of this case and expanded upon in the applicant's exceptions was the rate differential between the charges under protestant Craun's tariff and the applicant's proposed rates under the terms of the contract submitted with this case. It is our opinion that the Attorney Examiner did not place sufficient weight upon the differ-

ences in transportation charges between protestant Craun and this applicant. The record clearly indicates that this shipper required a lower rate than that which he could obtain under the protestant's tariff. The protestant's rate is in effect a prohibitive rate; and this is substantiated by the fact that this carrier has not hauled the involved commodities under its certificate involved herein from the involved area.

This Commission has held in numerous cases that a lower rate proposed by a contract motor carrier constitutes a deficiency in the service of a subsisting and protesting common carrier. This principle was approved by the Ohio Supreme Court in *Wooster Freight Lines, Inc.* v. *PUCO*, 163 Ohio St., 11, wherein the Court stated:

"Inability of a carrier to provide service to his shipper at rates substantially equivalent to that of other proffered carrier service constitutes a deficiency in service within the purview of the applicable statutes."

The aforementioned *Wooster case* was cited by this Commission with approval in the *Watson Trucking Company case* (Case No. 3101, Permit No. 2725), decided June 11, 1957, wherein we stated:

"(6) The protestants' services are deficient for the reason that the protestants are not affording the shipper herein rates substantially equivalent to those rates proposed by the applicant."

This Commission in the application of Clayton O. Innes, Case No. 677, decided June 20, 1956, also held the services of the protestants to be deficient for the reason that "The minimum rate of the common carriers which apply to all shipments of these shippers are substantially higher than the rates available through this applicant."

Under the circumstances prevailing in this case and in conformity with prior decisions of this Commission we are of the opinion that the rate differential present in this case constitutes a deficiency in the service of protestant Craun.

It is also noted that while the applicant in its vigorous exceptions cites the fact that this shipper requires *a complete transportation service* (emphasis supplied), and points out that a substantial differential in transportation charges exists herein, the protestant filed no reply to or took issue with these exceptions.

The records of this Commission indicate that this applicant has had on file with this Commission a contract between it and Bolton Sales, Inc. for the transportation of "Lime and property used in the operation of a lime plant" from Woodville and Gibsonburg, Ohio. Witness Bolton stated that he had changed the status of his business from that of a corporation to that of a proprietorship.

Witness Bolton controlled and owned Bolton Sales, Inc. and retains the same control and ownership over the proprietorship as retained over the corporation.

This Commission has held that the mere technical change in form of its management by a shipper wherein the management and ownership remains unchanged affords no basis for protest on behalf of motor common carriers.

In the Application of Downer Cartage Vompany (Case No. 4100, Permit No. 622), decided February 6, 1958, this Commission stated:

". . . it appears that there is no change in the type and character of service to be rendered. In effect, this Applicant is 'following the traffic' which it has always enjoyed in the transportation of General Electric major appliances. This application was necessitated by a technicality in our statute which requires the approval of this Commission to the listing of *all* new shippers on existing contract motor carrier permits. A policy decision by the parent company, General Electric Corp. is involved here, which decision transferred the sale and distribution of major appliances from one of its subsidiaries to another. The application is basically made, then, as a matter of information for this Commission and the public; as well as to see to it that the correct corporate entity is listed on the permit of this applicant."

The aforementioned *Downer case* also stands for the principle above set-forth, i. e., that a member of the shipping public is entitled to *a complete transportation service.* (Emphasis supplied.) It would be unreasonable to require a shipper to go to the additional expense of hiring two motor carriers to transport its products where one such carrier could expeditiously and economically do so. This principle of economy was enunciated by the Supreme Court of Ohio in the case of *Clark* v. *PUCO*, 122 Ohio St., 57, wherein the Court stated:

"It is the public good that should control, and not the profits of some present holder of a certificate."

For the foregoing reasons we are of the opinion that the instant application should be granted. The shipper herein has established a definite need for the proposed transportation services and the services of the protestant common carriers have been shown to be inadequate.

COMMISSION'S FINDINGS:

From the evidence presented in this proceeding the Commission makes the following findings:

(1) The application, exhibits, and publication are in compliance with the appropriate statutes;

(2) This Commission has jurisdiction to hear and determine the issues presented;

(3) The applicant herein is a proper party to hold additional authority from this Commission;

(4) The protestant, Bulk Transport Corporation, does not possess the authority to transport the property of this shipper;

(5) The services of Protestant Craun Transportation, Inc. are deficient for the following reasons:

(a) The protestant does not possess the authority to afford the shipper a completely integrated and entire transportation service.

(b) The protestant does not offer to transport the shippers products at substantially the same rate proposed by the contract carrier applicant.

(6) A mere technical change in name, without any change in ownership or control, affords no basis for protest on behalf of a motor common carrier; and

(7) The proposed operation affords the shipper an economical method for delivering its products to its customers; and under the circumstances of this case such proposal appears to be reasonable and according to the transportation policy of this Commission.

It is, therefore,

ORDERED, That to the extent to which it conflicts with the views expressed above, the report of the Attorney Examiner be and the same hereby is overruled.

It is, further,

236

ORDERED, That the within application be and the same hereby is granted.

It is, further,

ORDERED, That Permit No. 666 be amended by adding thereto as a shipper, W. W. Bolton of Barberton, Ohio, and at the same time by deleting therefrom as a shipper, Bolton Sales, Inc.

THE PUBLIC UTILITIES COMMISSION OF OHIO

Entered in Commission's Journal:

A true copy:

W. E. Herron, Secretary

Chairman

Commissioners