Duffey, J.
Braddock’s first contention is that the commission did not make findings of fact as required by Section 4903.09, Revised Code. Specific findings of fact distinct from the opinion would best fulfill the purpose and requirements of the law. However, in the present case, the opinion incorporates or contains findings on all essential points. We do not consider the deviation in format to be so substantial as to warrant reversal.
The real controversy concerns the scope of operations by the irregular-route carrier under the statutes, commission regulations, and the conditions of Schipper’s certificate. It is true, as Schipper’s contends, that the determination of a “regular route” operation is a question of fact for the commission. Section 4921.02, Revised Code. In the present case, there is no real dispute over the significant facts. Under those circumstances the reasonableness of the commission’s determination depends on the law involved.
Braddock has made 20 assignments of error. Essentially, these are that the commission erred in not finding on the facts a violation of (1) statutory requirements under Chapter 4921, Revised Code, (2) the commission’s administrative order No. 125 and, in particular, paragraph 14 thereof, and (3) the conditions contained in Schipper’s certificate.
In the field of motor transport common carriers, the general policy of the federal Interstate Commerce Commission and that implicit in the Ohio commission order here differ. The federal position is well emphasized in Brady Transfer & Storage Co. (ICC), 47 M. C. C., 23. See, also, Brady Transfer & Storage Co. v. United States, 80 F. Supp., 110. The approach in the Brady case rests on the preservation of distinctions between regular and irregular service, with strict regulation of competition between the two classes of carriers thus created. Detailed criteria have been developed to determine the nature of the service provided by a carrier’s operation.
The Ohio commission order here contemplates a far broader and more flexible policy both with respect to the nature of the service to be rendered under “irregular” certification and the degree of competition allowed between the types of carriers. Obviously, it is not for this court to determine which approach *206 best serves the public interest. The question is whether the statutes do so. In our opinion they do not.
Both the so-called “irregular route” and the “regular route” carriers are common carriers licensed by the state. The general purposes to be accomplished in their regulation are set forth in Section 4921.03, Revised Code. These are general in nature. Braddock relies primarily upon the definitions contained in Section 4921.02 of the Revised Code which, as pertinent here, provides:
“(D) ‘Fixed termini’ refers to the points between which any motor transportation company usually or ordinarily operates, provides, or proposes to operate or provide motor transportation service.
“(E) ‘Regular route’ refers to that portion of the public highway over which any motor transportation company usually or ordinarily operates, provides, or proposes to operate or provide motor transportation service.
“(F) ‘Irregular route’ refers to that portion of the public highway over which is conducted or provided any other operation of any motor vehicle by a motor transportation company transporting property.”
As Chief Justice Marshall pointed out in Lake Shore Electric Ry. Co. v. Public Utilities Commission (1926), 115 Ohio St., 311, 318, these definitions do not show that there is any necessary connection between a “fixed termini” operation and the nature of the route, i. e., regular or irregular. Nor in defining the two types of routes is there any clear distinction made in the type of service rendered. The operative sections of Chapter 4921 contain specific requirements applicable to the holders of all three types. But we fail to see that these various specific requirements in turn establish any definitive policy with respect to the nature of the service rendered or the degree of competition allowed between shippers holding regular-route and irregular-route authority. Carriers may and frequently do hold both types of authority, as does Braddock here.
We, therefore, conclude that the order of the commission is not inconsistent with the specific statutory requirements.
Braddock contends that in the adoption of administrative order No. 125 the commission established specific regulations *207 controlling irregular-route carriers, and that on the facts here the commission's order violates its own regulation. Schipper’s argues that this order No. 125 is a statement of policy only. However, on the record as presented here the order appears to be a duly adopted regulation which is in full force and effect. We, therefore, assume it to be so.
Chapter 4921 is essentially an enabling act to be implemented by the commission. It has been delegated authority to regulate motor carriers. Sections 4921.04 and 4921.07, Eevised Code. By adopting regulations it may develop transportation policy and may create distinctions or classifications of carriers or services beyond the bare statutory framework. The substantive regulations controlling the conduct of the industry may only be adopted, amended or repealed. Yet, while the commission cannot disregard or refuse to apply valid subsisting regulations, it may interpret and apply them to particular cases. Administrative order No. 125, in particular paragraph 14, goes further than the statutes in developing operating distinctions between the two types of certification. However, we consider the commission’s interpretation of the order to be a reasonable one, and on that interpretation its factual determinations are not unreasonable. The conditions in Schipper’s certificate contain similar language to that in order No. 125. It follows that the commission’s determination that no violation of the conditions was shown is reasonable and must also be upheld.
The procedural process applicable to the adoption of Public Utilities Commission regulations is not burdensome. On the other hand, the line between the interpretation of a regulation and its improper amendment or repeal under the guise of interpretation is a fine one and frequently difficult. Yet, the distinction is one which is essential to administrative law. The statutes and promulgated regulations establish the standards of conduct. Decisions in particular cases interpret and apply those standards. This structure provides a basic safeguard against lack of uniform regulation and arbitrary discrimination.
The genesis of the controversy here lies in the lack of clear statutory and regulatory policies. A review of the present regulations on motor transportation, and adoption of more *208 comprehensive and specific controls, would prevent much similar litigation in the future.
The order of the commission, being neither unreasonable nor unlawful, is affirmed.

Order affirmed.

Taft, C. J., Zimmerman, Matthias, O’Neill, Griffith and Herbert, JJ., concur.
Duffey, J., of the Tenth Appellate District, sitting by-designation in the place and stead of Gibson, J.