Morgan Drive Away, Inc., Appellant, *v.* Public Utilities Commission of Ohio, Appellee.
National Trailer Convoy, Inc., Appellant, *v.* Public Utilities Commission of Ohio, Appellee.

[Cite as Morgan Drive Away, Inc., v. Pub. Util. Comm. (1977), 51 Ohio St. 2d 11.]

(Nos. 76-1264 and 76-1270—Decided July 6, 1977.)

12

*Messrs. Sanborn, Brandon & Duvall, Mr. James Duvall* and *Mr. E. H. vanDeusen,* for appellant Morgan Drive Away, Inc.

*Messrs. Stiveson & Alden* and *Mr. John L. Alden,* for appellant National Trailer Convoy, Inc.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Mr. John W. Rudduck,* for appellee.

SWEENEY, J.  The issue in the instant cause is whether the order of the commission denying appellants' applications for certificates of public convenience and necessity was unreasonable or unlawful.

The statutory procedure for the granting of additional service certificates is set forth in R. C. 4921.10.  That section provides, in pertinent part, that:

"No motor transportation company shall commence its operation as such in this state without obtaining from the public utilities commission a certificate declaring that public convenience and necessity require such operation.

"The commission may, after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required * * * to the satisfaction of the commission. * * *

"Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought. *If it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate,* the commission shall not grant such certificate."  (Emphasis added.)

In determining whether the service furnished by Motor Service was "reasonably adequate" to meet the public need, the commission found that, no matter how convincing the evidence was concerning the poor quality of service rendered by Motor Service, appellants could not have demonstrated a public convenience and necessity for additional service.[5] We disagree.

---

[5]The commission states in its September 29, 1976, order, as follows:

"The commission in analyzing the evidence submitted in an effort to satisfy the burden of proving a definite need of the general public, finds as follows:

"(a) The most numerous group, individual mobile home owners, almost universally testified to dissatisfaction with one or more aspects of service rendered by Motor Service in making a past movement of their respective coaches. The record however is void of any indication that any of the individual coach owners has a present or concrete future need to seek mobile home transportation. * * *

"(b) The mobile home dealers again alleged dissatisfaction with certain aspects of the transportation and/or ancillary services rendered by Motor Service but, conspicuously absent was any concrete testimony of present or future need for common carrier transportation service over and above that available to them. * * *

"(c) The mobile home park owners and/or operators, like the two prior categories, testified to their observance of, and dissatisfaction with, the service provided by Motor Service. * * * The record reveals testimony concerning property damage done by Motor Service within the park and allegations of inadequate personnel and equipment but again, no corresponding testimony of any present or future need of the park owners or operators, for mobile home transportation service over and above that available to them if they had need to utilize the same. * * *

"(d) The mobile home manufacturers appeared generally satisfied with their present service available and there was no testimony that Motor Service was unable or unwilling to make movements for them. The record reveals isolated instances of dissatisfaction with certain driver's abilities or practices but, other than a general feeling that, as production increases, more carriers would be necessary, no testimony of a present or concrete future volume of units needing transportation over and above that available was given. * * *

"The commission, having analyzed the evidence submitted by the joint applicants in an effort to satisfy their burden of proving public convenience and necessity, finds it appropriate to reiterate that allegations of inadequate service do not, by inference or otherwise, establish a definite need for additional common carriers."

The General Assembly never intended that the commission should ignore the quality of service provided by the existing certificate holder to the public in determining under R. C. 4921.10 whether other motor transportation companies have provided justification for entry into a particular market.

Rather, the General Assembly has assigned the commission a much broader role in serving the public interest with respect to the regulation of motor transportation companies as evidenced by its statement of policy found in R. C. 4921.03. This section provides, in pertinent part, that:

"The policy of this state is to:

"(A) Regulate transportation by common and contract carriers by motor vehicle in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest:

"(B) Promote *adequate, economical,* and *efficient* service by such motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices. * * *" (Emphasis added.)

In applying these provisions to the instant cause, this court finds that the commission is charged not only with insuring that an authorized motor transportation company is meeting the demands of its customers in terms of such considerations as adequately handling the volume of traffic, but also with insuring that such service is of acceptable, reasonable quality.

This interpretation of the scope of the commission's role is buttressed when read in conjunction with R. C. 4921.-04, which vests in the commission broad powers in supervising and regulating motor transportation companies with respect to all matters affecting the relationship between such companies and the public.

In its September 29, 1976, order, the commission found that it need not consider such allegations against Motor Service, such as damage caused to mobile homes while in

transit, discourtesy of its drivers, and mishandling of damage claims, in determining whether a public need for additional service exists.' Such a finding is completely inconsistent with the role the General Assembly has assigned the commission. It cannot be forgotten that motor transportation companies were placed under the jurisdiction of the commission for the specific purpose of serving the public interest. *McLain v. Pub. Util. Comm.* (1924), 110 Ohio St. 1. It is incorrect to say that while the commission must insure that the public's demand for certain transport service is met, it cannot also insure that the public is obtaining service that is of acceptable quality. Such distinctions are not found in the statute, and the commission was in error to have employed them.

The commission, in support of its order, cites numerous precedents of this court dealing with the need to establish elements of public convenience and necessity,[5] but none are applicable to the present situation, in which the appellants support their applications for additional service with overwhelming evidence that service provided by the solely authorized motor transportation company in the area is unsatisfactory.

The commission places great reliance on *Mason v. Pub. Util. Comm.* (1973), 34 Ohio St. 2d 21, wherein a motor

---

[4]The commission states, in its conclusions of law:

"(9) Allegations of damage to a coach in transit, or at its park origin, or at its park destination, discourtesy on the part of drivers, mishandling of damage claims, illegal movements, and other similar repeated allegations do not constitute parts of 'transportation service, for hire'. as that phrase is used in Section 4921.01 Revised Code.

"(10). The commission is not empowered to adjudicate the rights of parties in the event of. loss or damage and an aggrieved party must seek his remedy at law in a proper forum of competent jurisdiction.".

[5]Specifically, the commission cites *Lykins v. Pub. Util. Comm.* (1926), 115 Ohio St. 376; *Erie Rd. Co. v. Pub. Util. Comm.* (1927), 116 Ohio St. 710; *Canton-East Liverpool Coach Co. v. Pub. Util. Comm.* (1930), 123 Ohio St. 127; *A & T Motor Freight v. Pub. Util. Comm.* (1932), 125 Ohio St. 617; *Penn-Ohio Coach Lines Co. v. Pub. Util. Comm.* (1942), 140 Ohio St. 263; and *Mason v. Pub. Util. Comm.* (1973), 34 Ohio St. 2d 21.

transportation company unsuccessfully challenged an order of the commission denying its application to serve the public in transporting household goods, office furniture, and fixtures over certain irregular routes. In that case, the appellant relied primarily on the testimony of five witnesses, who had dealt with the existing certificate holders in the past, to demonstrate the need for this additional service. In determining whether the commission's order was unreasonable or unlawful, this court noted that there were three instances in which the witnesses were having difficulty in obtaining service—upon requests to be moved on short notice, on Saturdays, or during peak seasonal moving periods. We stated that the applicant failed to demonstrate a public need for additional service, since, at best, he only proved that existing certificate holders might be unable to specifically meet every demand through use of their own equipment. Proof of convenience, without a demonstrative showing of public necessity for such additional service, could not justify the commission in granting the application.

The commission, in exhaustively reviewing the testimony of record in this cause, likewise found that the statements made by the witnesses before the attorney examiner at the initial hearings failed to show the present or future need for additional services other than those already provided by Motor Service, and therefore found *Mason, supra,* to be controlling.

The commission's reliance on the *Mason* case is misplaced. In the instant cause, appellants challenge the capability of Motor Service to adequately respond to the public demand for motor transportation service because of the poor quality of service provided. Also, as opposed to the situation in the *Mason* case, Motor Service was the only authorized certificate holder in the area in question. In initially granting Motor Service a certificate of public convenience and necessity, the commission recognized that a need for adequate service existed in that area. Thus, by successfully demonstrating that the only service provided

to the public in this area was patently inadequate, appellants could show that there was a need for additional service.

In reviewing the record, this court finds that the evidence overwhelmingly establishes that the service provided by Motor Service was inadequate to meet the public need under R. C. 4921.10.[a]

Because the September 29, 1976, order is unreasonable and unlawful, it is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Order reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, STERN, P. BROWN and LOCHER, JJ., concur.

STERN, J., retired, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting for W. BROWN, J.